[Cite as *State v. Eaton*, 2010-Ohio-6065.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### AUGLAIZE COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,            CASE NO.  2-10-10

    v.

DARREN EATON,                  O P I N I O N

    DEFENDANT-APPELLANT.

STATE OF OHIO,

    PLAINTIFF-APPELLEE,            CASE NO.  2-10-11

    v.

DARREN EATON,                  O P I N I O N

    DEFENDANT-APPELLANT.

**Appeal from Auglaize County Municipal Court**
**Trial Court Nos. 09 TRC 3316 and 09 CRB 340**

**Judgment Affirmed in Part, Reversed in Part and Cause Remanded**

**Date of Decision:   December 13, 2010**

Case No. 2-10-10 and 2-10-11

---

**APPEARANCES:**

    *Jon J. Saia* **for Appellant**

    *Darren L. Meade* **for Appellee**

**SHAW, J.**

{¶1} Defendant-Appellant Darren A. Eaton ("Eaton") appeals the February 12, 2010 judgments of the Auglaize County Municipal Court finding him guilty of OVI in violation of R.C. 4511.19(A), refusing to submit to a chemical test under R.C. 4506.17, and resisting arrest in violation of R.C. 2921.33.

{¶2} On June 6, 2009, at approximately 3:00 a.m., Officer Welker of the Wapakoneta Police Department noticed a rogue set of tire tracks crossing the curb and extending over the grassy lawn situated in front of the Neil Armstrong Museum. Officer Welker observed that the tracks continued through the grass for approximately 100 yards and ended in the parking lot of the Museum. Officer Welker drove his patrol car around to the parking lot where the tracks appeared to end. There, he found a commercial vehicle driven by Eaton with the engine still running. Officer Welker activated the overhead lights on his vehicle to signal Eaton to stop. Eaton reversed his vehicle to park in one of the marked parking

spaces. However, in his attempt to park the vehicle, Eaton failed to park within the designated lines, and drove the vehicle onto the sidewalk finally bringing it to a complete stop.

{¶3} The dashboard camera in Officer Welker's cruiser recorded the stop. Officer Welker asked Eaton to get out of the vehicle and confirmed Eaton's identity by reviewing his commercial driver's license. Officer Welker testified that upon his initial contact with Eaton he immediately noticed a strong odor of alcohol coming from inside Eaton's vehicle. He further testified that he noticed Eaton's eyes appeared bloodshot and glassy, and that Eaton was also unsteady on his feet. At this point, Officer Cox had arrived on the scene to offer his assistance to Officer Welker with the stop. Officers Welker and Cox conducted a search of Eaton's vehicle and found a half-emptied beer bottle which was still cold to the touch. Officer Welker administered standard field sobriety tests to Eaton and based on Eaton's performance determined that he was under the influence.

{¶4} Officer Welker advised Eaton that he was under arrest and asked him to turn around and place his hands on the hood of the police cruiser so that Officer Welker could handcuff him. Eaton failed to comply with these orders and prevented Officer Welker from securing the handcuffs around his hands. Officer Welker warned Eaton that he would be tasered if he persisted in being uncooperative. Despite these warnings, Eaton refused to comply with Officer

Welker's instructions which resulted in Eaton being tasered twice before he finally permitted Officer Welker to handcuff him.

{¶5} Officer Welker then transported Eaton to the Auglaize County Sheriff's Office so that he could administer a breath test to Eaton. The conversation that took place between Eaton and Officer Welker was captured on the microphone attached to the lapel of Officer Welker's uniform. Officer Welker read to Eaton the contents on the back of the BMV Form 2255 which included the consequences for refusing to submit to a chemical test for a person driving a commercial vehicle. Eaton then signed the BMV Form 2255 acknowledging that the information on the back of the form was read to him and that he received a copy of the form. Officer Welker then mistakenly informed Eaton that the legal blood-alcohol content for a commercial driver was .02 of one per cent or more by whole blood or breath, when in fact the legal limit was .04 of one per cent or more by whole blood or breath for someone operating a commercial vehicle. Initially, Eaton agreed to submit to the breath test, but upon further consideration ultimately refused to submit to any chemical testing.

{¶6} Eaton was charged with the following offenses: refusing to submit to a chemical test under R.C. 4506.17; operating a motor vehicle while under the influence in violation of R.C. 4511.19(A)(1)(a); reckless operation of a motor vehicle in violation of R.C. 4511.201; open container in a motor vehicle in

violation of R.C. 4301.62; and, resisting arrest in violation R.C. 2921.33(A).[1] Eaton was also placed under an immediate administrative license suspension ("ALS") of his commercial driver's license for a period of not less than one year pursuant to R.C. 4506.17.

{¶7} On June 10, 2009, Eaton appeared before the court and entered a plea of not guilty to the charges. On October 26, 2009, Eaton filed a motion in limine to preclude evidence of his refusal to submit to a chemical test. As the basis for his motion to preclude evidence of his refusal, Eaton argued that his refusal was "coerced" because Officer Welker incorrectly informed him of the per se legal blood-alcohol limit for commercial drivers. On October 26, 2009, Eaton filed an ALS appeal. On December 1, 2009, the trial court overruled Eaton's motion in limine.

{¶8} On January 4, 2010, Eaton's case was tried before a jury. Officers Welker and Cox testified for the prosecution and Eaton testified on his own behalf. The video and audio recordings of the stop and subsequent events including Eaton's refusal were played for the jury. The court ultimately dismissed the charges of open container and reckless operation pursuant to a Crim.R. 29 motion. The charges of refusing to submit to a chemical test, OVI and resisting arrest were

---

[1] Eaton's criminal charge for resisting arrest was filed under case number 2009 CRB 00340 which corresponds to appeal number 02-10-11. The traffic charges were file under case number 2009 TRC 03316 corresponding to appeal number 02-10-10. The trial court joined the two cases for the purposes of trial. The two cases were also subsequently consolidated on appeal.

submitted to the jury. On January 6, 2010, the jury returned a verdict of guilty on all three counts.

{¶9} At the February 9, 2010 sentencing hearing, the court placed Eaton on non-reporting community control sanctions, ordered him to pay applicable fines and suspended his driver's license for one year. On February 12, 2010, the court overruled Eaton's ALS appeal.

{¶10} Eaton filed the instant appeal, asserting the following assignments of error:

### ASSIGNMENT OF ERROR I

**THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION IN LIMINE AND PERMITTING EVIDENCE OF DEFENDANT'S REFUSAL OF A BREATHALYZER TEST TO BE SUBMITTED TO THE JURY**

### ASSIGNMENT OF ERROR II

**THE TRIAL COURT ERRED IN DENYING DEFENDANT'S APPEAL OF HIS ADMINISTRATIVE LICENSE SUSPENSION**

### ASSIGNMENT OF ERROR III

**THE TRIAL COURT ERRED IN PROVIDING THE JURY INSTRUCTIONS WHICH PERMITTED THE JURY TO CONSIDER EVIDENCE OF ANY "MEASURABLE OR DETECTABLE" AMOUNT OF ALCOHOL AND DEFENANT'S REFUSAL OF A BREATHALYZER, RESULTING IN HIS CONVICTION**

## ASSIGNMENT OF ERROR IV

**THE TRIAL COURT COMMITTED PLAIN ERROR IN FINDING THAT DEFENDANT WAS CHARGED WITH AND CONVICTED OF A VIOLATION OF R.C. § 4506.15(F), WHEN HE WAS ACTUALLY CHARGED WITH A VIOLATION OF R.C. § 4506.17(D)**

### *First Assignment of Error*

{¶11} In his first assignment of error, Eaton maintains that the trial court erred when it overruled his "Motion in Limine to Preclude Evidence of a Refusal of a Chemical Test."

{¶12} The record reflects that Eaton filed a motion in limine, seeking to exclude the evidence of his refusal of a chemical test, but failed to object to the evidence at trial. "[A] motion in limine does not preserve the record on appeal [;] * * * [a]n appellate court need not review the propriety of such an order unless the claimed error is preserved by an objection * * * when the issue is actually reached * * * at trial." (Emphasis omitted.) *State v. Grubb* (1986), 28 Ohio St.3d 199, 203, 503 N.E.2d 142.

{¶13} While there is significant authority indicating that the failure to object to the questioned evidence at trial constitutes an absolute waiver of the issue on appeal from a denial of the motion in limine, we elect to proceed on a plain error analysis in this instance. See for example, *State v. Scott*, Montgomery App. No. 22745, 2010-Ohio-1919, at ¶ 29; *Indep. Furniture Sales, Inc. v. Martin*,

184 Ohio App.3d 562, 570, 2009-Ohio-5697, 921 N.E.2d 718, 725; *State v. McCarley,* Summit App. No. 23607, 2008 -Ohio- 552, ¶ 30; *Estate of Beavers v. Knapp*, 175 Ohio App.3d 758, 787, 889 N.E.2d 181, 2008-Ohio-2023, ¶ 69. Accordingly, in this case we will proceed on the basis that Eaton waived all but plain error with regard to the issue on appeal. See *State v. McKnight,* 107 Ohio St.3d 101, 116, 2005-Ohio-6046, ¶ 97, 837 N.E.2d 315.

**{¶14}** Plain error exists where there is an obvious deviation from a legal rule which affected the defendant's substantial rights, or influenced the outcome of the proceeding. *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240. An error does not rise to the level of a plain error unless, but for the error, the outcome of the trial would have been different. *State v. Hancock*, 108 Ohio St.3d 57, 67, 2006-Ohio-160, 840 N.E.2d 1032.

**{¶15}** As the basis for his argument, Eaton contends that his refusal to submit to a chemical test was "coerced" because Officer Welker incorrectly informed him that the legal blood-alcohol content for a commercial driver was .02 of one per cent or more by whole blood or breath when in actuality the relevant statutory authority states that the legal limit for commercial drivers is .04 of one per cent or more by whole blood or breath. See R.C. 4506.15(A)(2). Eaton maintains that Officer Welker's misstatement regarding the per se blood-alcohol limit for commercial drivers rendered his refusal "involuntary."

{¶16} In support of his argument, Eaton directs our review to cases finding that a defendant's *consent* to take a chemical test was rendered involuntary when the consent was induced by the improper actions by the arresting officer. However, after reviewing these cases cited by Eaton, we find them to be inapposite to the case at hand. Specifically, the cases cited by Eaton involve excluding evidence of the defendant's consent when the officer requested the defendant to submit to a chemical test without placing the defendant under arrest or when the officer improperly advised the defendant of the implied consent provisions and/or misstated the consequences of refusal—i.e. imposition or length of license suspension—upon requesting the defendant to submit to a chemical test. In each of these cases, the arguments set forth by the defendant complain that the arresting officer's error resulted in a violation of the defendant's constitutional rights.

{¶17} In this case, Eaton does not allege that Officer Welker's misstatement regarding the per se blood-alcohol limit for a commercial driver in anyway impinged upon his constitutional rights. The sole basis for Eaton's contention that his refusal should be rendered involuntary and that the evidence of his refusal should be excluded, is based on statutory law. However, in the context of R.C. 4511.191, the Supreme Court of Ohio has made the distinction between statutory and constitutional requirements and has found that suppression of

-9-

evidence is only reserved for alleged violations of constitutional rights.[2]  *Hilliard v. Elfrink*, 77 Ohio St.3d 155, 158, 1996-Ohio-333, 672 N.E.2d 166.

**{¶18}** Our review of the record reveals that Officer Welker properly advised Eaton both as to the statutory provisions governing a licensed driver's implied consent to submit to a chemical test and as to the consequences for a driver of a commercial vehicle for refusing to submit to chemical testing.  In fact, the conversation between Eaton and Officer Welker at the Auglaize County Sheriff's Office was captured by Officer Welker's lapel microphone and was recorded.

**{¶19}** Prior to reading the relevant portions of the BMV Form 2255 to Eaton, Officer Welker made it a point to specifically bring to Eaton's attention the information pertinent to drivers of commercial vehicles.  Officer Welker then asked Eaton to follow along with him as he read the implied consent provisions on the BMV Form 2255 regarding the charge of OVI and the following provision of the form governing an offender driving a commercial vehicle:

---

[2] Moreover, Eaton neglects to cite more recent cases which reject defense arguments that an officer's misinformation or other statements coerced a suspect's consent.  See e.g. *Columbus v. Dixon,* 10th Dist. No. 07AP-536, 2008-Ohio-2018, at ¶ 7 ("despite the fact that the police officers informed appellant that if she refused the test she would be held in custody for 12 to 24 hours, we find that the officers did not coerce appellant into taking the Breathalyzer test"); *Wickliffe v. Hromulak,* 11th Dist. No.2000-L-069, 2001 Ohio App. LEXIS 1835, at *13 ("[t]he fact that appellant * * * failed to recognize that he would be subject to penalties beyond the ninety-day administrative suspension * * * does not call into question the validity of his consent in submitting to the BAC test"); *State v. Tino,* 1st Dist Nos. C-960393, C960394, and C-960395, 1997 Ohio App. LEXIS 747, at *6 ("[t]he results of the [chemical] test * * * were admissible in the disposition of appellant's criminal case regardless of whether the ALS provisions were properly communicated").

-10-

> **I am a law enforcement officer; I have probable cause to stop or detain you. After investigating the circumstances, I have probable cause to believe you were operating a commercial motor vehicle in violation of section 4506.15 of the Ohio Revised Code. I request that you submit to a test or tests of your blood, breath, or urine for the purpose of determining your alcohol concentration or the presence of any controlled substance.** *If you refuse to submit to the test or tests you will immediately be placed out-of-service for twenty-four-hours; you will be disqualified from operating a commercial motor vehicle for a period of not less than one year; and you will be required to surrender you commercial driver's license to me.*

(Emphasis added.)

{¶20} Officer Welker then asked Eaton if he had any questions regarding the provisions read to him. Eaton asked for clarification on the length of disqualification from operating a commercial vehicle for refusing to submit to a chemical test. Officer Welker reiterated that if Eaton chose to refuse the chemical test, his disqualification from operating a commercial vehicle would be for period of not less than one year.

{¶21} Officer Welker then simplified Eaton's situation by informing him that he had two choices, submit to the test or refuse. Officer Welker further explained to Eaton that if he submitted to the test and was found under the legal limit, Eaton's license would not be suspended. Officer Welker then incorrectly stated that the per se legal limit for drivers of a commercial vehicle was .02 of one per cent or more by whole blood or breath and asked Eaton if he was willing to

submit to a chemical test. However, Officer Welker clearly informed Eaton that in any event a refusal would result in an automatic suspension of his license.

{¶22} Initially, Eaton agreed to submit to the chemical test. However, while Officer Welker prepared the breathalyzer, Eaton continued to grapple with this decision by repeatedly asking Officer Welker what he thought Eaton should do. Each time Officer Welker refused to give Eaton advice on the subject and reminded Eaton that he was an adult and had to make his own decisions. It appears that Eaton was struggling to calculate whether the two beers he admitted to consuming hours earlier, between 9:30p.m. and 11:30p.m., would place him over the .02 limit as stated by Officer Welker. Eaton now argues that based on his "calculations," he surmised it would be best to refuse to submit to a chemical test. Eaton's testimony at trial further elaborated on his thought process during this time:

> **DEFENSE ATTORNEY: When you heard the point 0 two, what was your thought process then?**
>
> **EATON: Well, he—I was trying to get information out of one of the Officers to help me try to calculate how my blood alcohol was going to be—uh at that time I told them I drank two beers at nine-thirty to eleven-thirty—give or take in a half-an-hour-hour—I am not gonna be precise and to the moment—I don't know exactly. And I am trying to calculate in my head how much alcohol—I asked him numerous times I said—is that one beer-every two hours? Because I was worried that the point o two—I knew it used to be-uh-one o when I was in High School and everybody always said that it was one beer per hour. That's how—I am from West Liberty and that's how we were**

**instructed that if you drank more than one beer per hour you were over the legal limit.**

**\* \* \***

**DEFENSE ATTORNEY: So, what's the next thing that goes through your mind as you [sic] thinking about point o two?**

**EATON: I am trying to calculate in my head how many beers— I am not real smart and I have tried to calculate what my blood alcohol content would be. \* \* \* I'm trying to figure out how close I am to being—I thought he had me going or coming if I am at point four. You know what I mean? And I was too tense over— then he was going to get me here if I refused, he was going to get me here. I was trying to make a legitimate uh-conclusion.**

**DEFENSE ATTORNEY: So what did you figure—in your way of calculating did you calculate as to what you thought was the highest you could get?**

**EATON: Yes, numerous different times I kept—and I am trying to talk to the Officers and ask them and I am trying to come up with it, and the way I had it figured I was between two and [sic] o two and o four. And it was about a four or five hour period and two beers and I figured one beer per hour divide that by four—I had it all figured out in my head. A couple different times of course I would come up with something different cause I am not too smart. But I was trying and I was asking for his advice and the other Gentleman's advice. And I understand they don't have to give me advice.**

**DEFENSE ATTORNEY: Ok, if the Officer had told you point o four—would you have taken the test?**

**EATON: I believe I would today. That night I was going over my math and that opportunity wasn't given to me so I don't know. Uh-I was right there and I guess I probably would have taken it. I almost took it at point o two. And I probably should have—I know it's one of those things.**

(Tr. pp. 260-62).

**{¶23}** There is a significant difference between the argument that a law enforcement officer failed to fulfill certain statutory obligations *to inform a defendant as to the legal consequences of a refusal* or that the officer provided *false information to coerce the defendant's consent* to take the test and the argument that a law enforcement officer failed to provide all of the proper information necessary for the defendant *to personally determine whether it was in his best legal interests to take the test or not.*

**{¶24}** There is no statutory or constitutional authority to require that law enforcement officers must accurately advise defendants as to all of the information necessary to determine whether taking the test is in their best personal or legal interests. Eaton attempts to blur the distinction between these two circumstances but we decline to adopt his argument.

**{¶25}** We further note that "[t]he reason [a defendant] refused to take a breath test is a disputed fact to be resolved by the jury." *Maumee v. Anistik*, 69 Ohio St.3d. 339, 344, 1994-Ohio-157, 632 N.E.2d 497. At trial, Eaton was given the opportunity to advance and further develop the same arguments against the "voluntariness" of his refusal as he did in his motion in limine. In the end, it was left to the jury to weigh the credibility of the testimony elicited at trial to determine the "voluntary" nature of Eaton's refusal.

{¶26} Based on the foregoing, we do not find that the trial court's decision to overrule Eaton's motion in limine to preclude evidence of his refusal to the jury was an obvious deviation from a legal rule which affected Eaton's substantial rights, or influenced the outcome of the proceeding so as to constitute plain error. Accordingly, we find no error in the trial court's decision to overrule Eaton's motion in limine to preclude evidence of his refusal.

{¶27} Eaton's first assignment of error is, therefore, overruled.

*Second Assignment of Error*

{¶28} In his second assignment of error, Eaton maintains that the trial court erred when it denied Eaton's appeal of his administrative license suspension ("ALS"). Again, Eaton argues that Officer Welker's misstatement regarding the per se legal limit should render his ALS ineffective.

{¶29} At the outset, we note that R.C. 4511.197(C) governs the scope of the ALS appeal and expressly limits a court's review to determining whether one or more of the specified conditions have not been met. These conditions as they relate to Eaton's case are: (1) whether arresting officer had reasonable ground to believe the appellant was operating a vehicle in violation of a state or municipal OVI statute and whether the appellant was in fact placed under arrest; (2) whether the officer requested the appellant to submit to a chemical test; (3) whether the arresting officer informed the appellant of the consequences of refusing to be

tested or of submitting to the test; (4) whether the appellant refused to submit to the chemical test requested by the officer. See R.C. 4511.197(C).

{¶30} As discussed above, each of these conditions were met by Officer Welker at the time of Eaton's arrest. The facts support that Officer Welker had reasonable grounds to believe that Eaton was operating his vehicle while intoxicated. Officer Welker then asked Eaton to submit to a chemical test and advised Eaton, at length, of the consequences of refusal which included a suspension of his commercial driver's license for a period not less than a year. Ultimately, Eaton chose not to submit to the breath test.

{¶31} It should be noted that nowhere in the statutory conditions mentioned above is the requirement that the officer inform the appellant of the applicable per se legal limit prior to requesting the appellant to submit to chemical test.[3] Nor does Eaton direct our attention to any statutory provision which requires that he be given such notice. Simply put, Eaton was properly advised of the consequences of his refusal to the chemical test and having been apprised of the ramifications of his refusal, made the conscious decision to refuse to submit to any chemical testing. Moreover, Eaton was found guilty of refusing to submit to a

---

[3] See R.C. 4506.17(C) the applicable statutory provisions for commercial drivers which states "[a] person requested to submit to a test under division (A) of this section shall be advised by the peace officer requesting the test that a refusal to submit to the test will result in the person immediately being placed out-of-service for a period of twenty-four hours and being disqualified from operating a commercial motor vehicle for a period of not less than one year, and that the person is required to surrender the person's commercial driver's license to the peace officer."

chemical test while driving commercial vehicle—an offense that made Eaton subject to a disqualification from operating a commercial vehicle for a period of one year by the registrar of motor vehicles. See R.C. 4506.16(D). Accordingly, we find no error in the trial court's decision to overrule Eaton's motion and uphold his ALS.

{¶32} The second assignment of error is, therefore, overruled.

*Third Assignment or Error*

{¶33} In his third assignment of error, Eaton argues that the trial court abused its discretion by improperly instructing the jury to consider whether Eaton had a "measurable or detectable" amount of alcohol in his system while driving his commercial vehicle at the time of incident. Again, Eaton's argument under this assignment of error is based, in part, upon a finding that evidence of his refusal to submit to a chemical test should have been excluded. Having found otherwise in the first assignment of error, we will proceed with Eaton's remaining argument which maintains that the trial court's instruction on this matter was misleading and confusing to the jury.

{¶34} The giving of jury instructions is within the sound discretion of the trial court and will not be disturbed upon appeal unless the record reflects that the trial court abused its discretion. *State v. Guster* (1981), 66 Ohio St.2d 266, 271-272, 421 N.E.2d 157. A strong presumption exists in favor of the propriety of jury

instructions. *Burns v. Prudential Securities, Inc.*, 167 Ohio App.3d 809, 2006-Ohio-3550, 857 N.E.2d 621, ¶ 41. A jury instruction must be viewed in the context of the entire charge rather than in "artificial isolation." *State v. Price* (1979), 60 Ohio St.2d 136, 398 N.E.2d 772, paragraph four of the syllabus. Instructions that, in their totality, are sufficiently clear to permit the jury to understand the relevant law will not be the cause of a reversal upon appeal. *Burns*, 2006-Ohio-3550, at ¶ 41, 167 Ohio App.3d 809, 857 N.E.2d 621. Whether the jury instructions correctly state the law is a question of law, which we review de novo. *Murphy v. Carrollton Mfg. Co.* (1991), 61 Ohio St.3d 585, 591, 575 N.E.2d 828.

{¶35} The jury instruction at issue concerned Eaton's charge for refusing to submit to a chemical test under R.C. 4506.17, the statutory section that governs commercial drivers. The court's instruction submitted to the jury stated the following:

> **The defendant is charged with refusing to submit to a test under section 4506.17. Before you can find the defendant guilty you must find beyond a reasonable doubt that on or about the 6th day of June, 2009, that the defendant, Darren A. Eaton did in Auglaize County, Ohio, drive a commercial vehicle. You must find beyond a reasonable doubt that the officer did have reasonable grounds to stop and detain Mr. Eaton and that after investigating the circumstances surrounding the operation of the commercial vehicle you must find beyond a reasonable doubt that the officer had reasonable grounds to believe that the defendant had a measurable or detectible amount of alcohol in his system. Finally, you must find that the defendant did refuse**

**to submit to the test or tests requested by the officer after having been warned that a refusal to submit to the test will result in the person being immediately being [sic] placed out of service for a period of twenty four hours and being disqualified from operating a commercial vehicle for not less than one year, and that the person is required to surrender the person's commercial driver's license to the peace officer.**

**\* \* \***

**Evidence was presented regarding the legal limit of [sic] as to the blood alcohol content of a person operating a commercial vehicle. The law prohibits anyone driving a commercial vehicle while having a measurable or detectible amount of alcohol in the person's breath, blood or urine and also prohibits a person from driving a commercial vehicle with an alcohol concentration of .04 of one percent or more by whole blood or breath. There are additional penalties that are imposed when the person's alcohol concentration is at the .04 level or greater.**

{¶36} Eaton especially takes issue with the second component of the jury charge above and argues that the instruction misled to the jury to believe that "if they were persuaded that [Eaton] had a 'measurable and detectable' amount of alcohol in his system while driving his commercial vehicle, that he would be found guilty of the charges against him." (Appt's Brief, at 21). However, upon taking the disputed instruction out of "artificial isolation" and reviewing it in the context of the entire charge, we do not reach the same conclusion as Eaton.

{¶37} The first component of the instruction cited above tracks the relevant statutory law describing the offense with which Eaton was charged. Specifically,

R.C. 4506.17 expressly includes the contended language "measurable and detectable" in the following manner:

**(A) Any person who holds a commercial driver's license or operates a commercial motor vehicle requiring a commercial driver's license within this state shall be deemed to have given consent to a test or tests of the person's whole blood, blood serum or plasma, breath, or urine for the purpose of determining the person's alcohol concentration or the presence of any controlled substance or a metabolite of a controlled substance.**

**(B)  A test or tests as provided in division (A) of this section may be administered at the direction of a peace officer having reasonable ground to stop or detain the person and,** *after investigating the circumstances surrounding the operation of the commercial motor vehicle,* _*also having reasonable ground to believe the person was driving the commercial vehicle while having a measurable or detectable amount of alcohol*_ *or of a controlled substance or a metabolite of a controlled substance* _*in the person's*_ *whole blood, blood serum or plasma,* _*breath*_*, or urine*. **Any such test shall be given within two hours of the time of the alleged violation.**

**{¶38}** After reviewing the relevant statutory language above, it is evident that a necessary element of the offense with which Eaton was charged is that Officer Welker had reasonable ground to believe that Eaton was driving the commercial vehicle while having a measurable or detectable amount of alcohol in his system.  Once Officer Welker made this threshold determination, the statute permitted Officer Welker to then ask Eaton to submit to a chemical test, which Eaton ultimately refused.  In order to convict Eaton, the jury must have found

beyond a reasonable doubt that this element was proven by the prosecution as a necessary and predicate requirement of the offense that Eaton, as a licensed commercial driver, refused to submit to a chemical test.

{¶39} Moreover, while the inclusion of the second component of the jury instructions stating the current law as it relates to a commercial driver may have been unnecessary, we do not find that its presence mislead the jury in the manner that Eaton suggests. Additionally, Eaton was also found guilty of OVI in violation of 4511.19(A)(1)(a). The instructions on this charge stated the following:

> **Evidence has been introduced indicating the defendant was asked but refused to submit to a chemical test of his blood, breath, or urine to determine the amount of alcohol in his system for the purpose of suggesting that the defendant believed he was under the influence of alcohol. If you find that the defendant refused to submit to said test or tests, you may, but are not required, to consider this evidence along with all the other facts and circumstances in evidence in deciding whether the defendant was under the influence of alcohol. [4]**

{¶40} We believe that upon reading the instructions as a whole, it is clear the jury instructions articulated that in order to find Eaton guilty of refusing to submit to a chemical test, the jury had to find beyond a reasonable doubt that Eaton refused Officer Welker's request to submit to a chemical test. With regard to the OVI charge, the instructions clearly stated that the jury was permitted to consider Eaton's refusal to submit to a chemical test as evidence in deciding

---

[4] It must be noted that the content of this jury instruction was expressly endorsed by the Supreme Court of Ohio in *Maumee v. Anistik*, 69 Ohio St.3d. 339, 334, 1994-Ohio-157, 632 N.E.2d 497.

whether he was guilty of the offense of operating a vehicle while under the influence. The jury was not charged, as Eaton argues, that in order to find him guilty of the refusal or OVI offenses they needed to merely find beyond a reasonable doubt that he had a measurable and detectable amount of alcohol in his system while driving his commercial vehicle. Therefore, we conclude that the trial court's instructions were sufficiently clear to permit the jury to understand the relevant law governing the charges for which Eaton was being tried. As such, we do not find the trial court abused its discretion in giving the jury these instructions.

{¶41} Accordingly, we overrule Eaton's third assignment of error.

*Fourth Assignment of Error*

{¶42} In his fourth assignment of error, Eaton contends that trial court committed plain error in finding that he was charged and convicted of "R.C. 4506.15(F)" when no subsection (F) currently exists. Because Eaton failed to object to this issue during the trial proceedings, we review this assignment of error for plain error.

{¶43} The traffic citation charging the offense stated that Eaton "did refuse to submit to a chemical test under 4506.17 ORC." The ticket then listed "4506.15(F)" as the offense charged. The actual code section proscribing a commercial driver from refusing to submit to a chemical test is R.C. 4506.15(A)(7). The statute describes the offense as, "No person shall * * * refuse

to submit to a test under section 4506.17 of the Revised Code." Section 4506.17, as discussed in the previous assignment of error, describes the prohibition of a commercial driver's refusal to submit to chemical test in more detail and sets forth the elements of the offense.

{¶44} Despite the misnumbering in the citation, we find that Eaton was fully apprised of the charges against him. Based on the description of the offense listed on the citation, R.C. 4506.15(A)(7) is the only subsection which proscribes a commercial driver's refusal a chemical test under R.C. 4506.17. It should also be noted that there is no code subsection (F) to R.C. 4506.15 which could have misled Eaton as to with what offense he was being charged. The citation directed Eaton to R.C. 4506.15 and (A)(7) was the only subsection relevant to the charge described on the citation. Moreover, as the Supreme Court of Ohio has stated, "traffic court procedure is not controlled by the stricter, more elaborate rules that govern procedures in more serious cases. Therefore, a complaint prepared pursuant to Traf.R. 3 simply needs to advise the defendant of the offense with which he is charged, in a manner that can be readily understood by a person making a reasonable attempt to understand." *Barberton v. O'Connor* (1985), 17 Ohio St.3d 218, 221, 478 N.E.2d 803 (Internal citations omitted).

{¶45} Furthermore neither Eaton nor his counsel ever objected to the misnumbering of the statute on the citation prior to the trial. Criminal Rule

12(C)(2) mandates that "[d]efenses and objections based on defects in the indictment, information, or complaint" must generally be raised "[p]rior to" trial, and Eaton's failure to timely object to the defects in the citation against him constituted a waiver of the issues involved. See Crim.R. 12(H).

{¶46} In addition, Crim.R. 7(B) states, in pertinent part: "Error in the numerical designation or omission of the numerical designation shall not be ground for dismissal of the indictment or information, or for reversal of a conviction, if the error or omission did not prejudicially mislead the defendant." In raising this assignment of error, Eaton fails to identify or otherwise direct our review to demonstrate how this error in the numerical designation prejudiced him or in any way prohibited him from fully defending himself against the charge.

{¶47} Rather, our review of the record indicates that at all points throughout the trial proceedings Eaton and his counsel understood that Eaton was charged with refusing to submit to a chemical while driving a commercial vehicle governed by R.C. 4506.17 and R.C. 4506.15(A)(7). This awareness of the precise charges against him is evident in Eaton's motion in limine to preclude evidence of chemical testing where he acknowledges that sections R.C. 4506.15(A)(7) and R.C. 4506.17 govern the facts and circumstances of this case. Moreover, at no time before or during trial did Eaton bring to the court's attention any different witnesses he would have called or additional evidence he would have presented,

nor did he ask for a continuance to make additional preparations based upon any alleged confusion or lack of apprisal as to what charges he was being required to defend. Under the totality of these circumstances, including the fact that the trial court properly instructed the jury as to the correct code section describing the offense, we cannot find that the defendant was prejudicially misled by the error in numerical designation.

{¶48} However, as a matter of housekeeping, we must note that the trial court also made minor clerical errors when it misnumbered the relevant code section in its February 12, 2010 judgment entering Eaton's sentence. Criminal Rule 36 provides, "Clerical mistakes in judgments, orders, or other parts of the record, and errors in the record arising from oversight or omission, may be corrected by the court at any time." Therefore, we must remand this case for the purpose of correcting the Judgment Entry imposing Eaton's sentence on the refusal charge to properly list **R.C. 4506.15(A)(7)** the correct code section for the offense of which Eaton was convicted. Accordingly, to this extent only, we sustain the assignment of error.

{¶49} In addition, we note that there are two consolidated cases before us on appeal. Eaton's assignments of error pertain only to his conviction in case number 2009 TRC 03316, appeal number 02-10-10. However, despite there being no assignment of error addressing Eaton's conviction for resisting arrest in case

number 2009 CRB 00340, appeal number 02-10-11, there is one issue we must raise *sua sponte* and address in this opinion. In reviewing the previous assignment of error concerning the clerical error of the misnumbered statute in the February 12, 2010 Judgment Entry imposing Eaton's sentence, we also noticed that there is an additional clerical error in the statement reflecting Eaton's conviction for the charge of resisting arrest. Therefore, we also must remand case number 2009 CRB 00340, appeal number 02-10-11, to the trial court for the purpose of correcting the Judgment Entry imposing Eaton's sentence for resisting arrest to list the proper code section **R.C. 2921.33**.

{¶50} For all these reasons, the judgments of the Auglaize County Municipal Court are affirmed as to the first, second and third assignments of error and reversed, in part, as to the fourth assignment of error for the purpose of correcting the clerical errors in the Judgment Entries imposing Eaton's sentence identified herein.

*Judgment Affirmed in Part,*
*Reversed in Part and*
*Cause Remanded*

**WILLAMOWSKI, P.J., concurs.**

**/jlr**

-26-

**ROGERS, J., Concurring Separately.**

{¶51} I concur with the majority's conclusions as to the Second, Third, and Fourth Assignments of Error. However, on the First Assignment of Error, I would find that the trial court's denial of the motion in limine to exclude evidence of Appellant's refusal was not preserved for appeal. Having so determined the issue, I would decline to address the merits of the trial court's ruling.