[Cite as *State v. Hendricks*, 2026-Ohio-1796.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY


State of Ohio/City of Oregon              Court of Appeals No. L-24-1216

      Appellee                          Trial Court No. 23 TRC 19760203

v.

Allexys Hendricks                         **<u>DECISION AND JUDGMENT</u>**

      Appellant                         Decided:  May 15, 2026


* * * * *

Melissa Purpura, Prosecutor, for appellee.

April F. Campbell, for appellant.

* * * * *

**OSOWIK, P.J.,**

{¶ 1} This is an appeal from a July 11, 2024 judgment of the Oregon Municipal

Court, denying appellant's motion to suppress in the underlying OVI case.  This appeal is

centered upon the validity of appellant's consent to a BAC test, given after conceding to

having consumed alcohol and failing field sobriety tests. For the reasons set forth below, this court affirms the judgment of the trial court.

{¶ 2} Appellant, Allexys Hendricks, sets forth the following assignment of error:

"[Appellant's] motion to suppress should have been granted because Officer Carlin's implied consent notice was invalid. [Appellant] acquiesced[,] rather than consented[,] to a claim of lawful authority."

*Case Background*

{¶ 3} The following facts are derived from the record of evidence presented to the trial court. On October 22, 2023, Officer Gabreyel Carlin ("Carlin") of the Oregon Police Department was on duty on Navarre Ave. in Oregon. At 2:52 a.m., Carlin observed a vehicle traveling westbound that was not operating headlights, despite it being the middle of the night. Accordingly, Carlin began following the vehicle, and initiated a traffic stop.

{¶ 4} Upon approaching the vehicle, Carlin detected a strong odor of alcohol emanating from appellant, the driver of the vehicle. Central to our consideration of this case, Carlin's patrol car dash camera, as well as the police station camera system, captured video footage of the communications between Carlin and appellant following the traffic stop, as well as subsequently at the police station, all of which has been carefully reviewed by this court in the course of reaching a determination in this case.

{¶ 5} Upon initial questioning by Carlin, appellant conveyed that she was heading home from a party at the time of the stop, and acknowledged that she had consumed several Smirnoff alcoholic beverages at the party.

2.

{¶ 6} Given the detection of the odor of alcohol, and appellant's acknowledgement of the consumption of alcohol, Carlin then administered field sobriety tests, which appellant failed. Following appellant's failure of the field sobriety tests, Carlin explained to appellant that she would have the option of either consenting to take a BAC test, or refusing to take a BAC test, and explained the specific consequences of those choices.

{¶ 7} In conjunction, Carlin advised appellant that, prior to making the choice, Carlin would read to appellant the form published by the Bureau of Motor Vehicles [BMV form 55] utilized by law enforcement in informing individuals faced with a BAC test of their options, consent or refusal, and of the corresponding consequences.

{¶ 8} The video footage reflects that appellant next stated to Carlin, "I had a couple [of alcoholic drinks,] I'm not going to lie, I'm drunk . . .Am I going to have to stay the night in a drunk tank?. . .I might as well just blow [consent to the BAC test]." Carlin responded, "I can't give you that advice [as to whether to consent to, or refuse, a BAC test]. . .I don't need an answer right now. . .I have the whole thing that I'm going to read to you [BMV form 55].

*Consent to BAC test, Positive Reading, Arrest*

{¶ 9} The video footage reflects that shortly after the above exchange, Carlin again explained to appellant her BAC test consent or refuse choices, and the corresponding consequences. The footage also shows Carlin reminding appellant that she will be reading the related BMV forms to her, and then shows Carlin reading verbatim to appellant BMV form 55.

3.

{¶ 10} The video footage reflects that throughout their interactions, spanning approximately 90 minutes, appellant consistently expressed a preference for consenting to take a BAC test, and ultimately elected to do so. The BAC test result was .169.

{¶ 11} Following the positive BAC result, appellant was arrested on one count of operation of a motor vehicle under the influence of alcohol, in violation of R.C. 4511.19(A)(1)(a). On March 6, 2024, appellant filed a motion to suppress.

*Motion to Suppress Hearing*

{¶ 12} On June 5, 2024, the suppression hearing was conducted. The transcript of the suppression hearing reflects that appellant outlined at the outset, "*We're going to severely restrict the scope of this motion. . . The only thing that. . .we're going to ask is that [the BAC test] be suppressed because there was a misstatement of law. . .[S]pecifically the defendant was improperly informed that she was under suspension when she was not, and it's on camera. That renders her consent invalid.*" (Emphasis added).

{¶ 13} Appellant's position, at the suppression hearing and upon appeal, is that, despite Carlin repeatedly prefacing that she was reading a form outlining the choices and the consequences, upon Carlin reading BMV form 55 to appellant, specifically the portion discussing the outcome of a refusal decision that, "your driver's license is now suspended", the reading of the form constituted, "Carlin [misstating to appellant that] her license was suspended [when] it was. . .not suspended [and thus] there was an acquiescence, not consent [to the BAC test]."

4.

{¶ 14} Appellant's position is premised upon the notion that appellant did not understand that Carlin was merely reading BMV form 55 to appellant, such that appellant mistakenly believed that her driver's license had been suspended prior to her consent or refuse decision. Appellant offers no evidence of a misunderstanding. The video footage reflects no misunderstanding. The balance of the record reflects no misunderstanding.

{¶ 15} The video footage reflects that in presenting the consent or refuse decision to appellant, Carlin states,

> *I'm going to read to you [after we arrive at the police station, BMV form 55,] that basically says what happens if you blow, and what happens if you refuse to blow. . .I don't need an answer right now. . .I have the whole form [that] I'm going to read to you. . . If you blow [over the legal limit] it's a 90-day license suspension. . .If you refuse to blow, it's an automatic one-year [license] suspension.* (Emphasis added).

{¶ 16} Upon inquiry of video footage reflecting that appellant asked Carlin what she should do on the pending BAC test decision, Carlin confirmed, "*That's correct. [Appellant] asked [me what she should do] and I said that I could not give her my opinion or advice [regarding her decision whether to consent to take, or refuse to take, a BAC test]*." (Emphasis added).

{¶ 17} The video footage of the communications between appellant and Carlin after their arrival at the police station was next played for the trial court. The video footage reflects that prior to appellant's decision on whether to consent or refuse, as Carlin had told appellant would occur, Carlin next read BMV form 55, verbatim, to

5.

appellant, detailing the BAC test consent or refusal choices, and the corresponding consequences.

{¶ 18} The video footage reflects that Carlin noted to appellant immediately before reading the form, "[M]ake sure you listen up because this is what we talked about in the car [the consent or refuse choices], okay?" Appellant responded, "Okay." Carlin then read BMV form 55, including the portion of the form explaining the consequences of a refusal, stating,

> If you refuse to take any chemical test required by law, your driving privileges will be suspended immediately. . .Your driver's license is now suspended [upon a refusal decision]. . .The suspension takes effect immediately. The suspension will last at least until your initial appearance on the charge, which will be held within five days after the date of this arrest or the issuance of citation to you. You may appeal the suspension at the initial appearance.

{¶ 19} Following the conclusion of the recitation of BMV form 55, Carlin tells appellant, "So take all that and consider [it all in order to] to make a decision on the blow." Appellant later makes her decision, replying, "I want to blow.

{¶ 20} As stated above, the premise of appellant's argument is that Carlin's above-quoted recitation of BMV form 55 should be construed, rather than Carlin reading the form, which details the choices and consequences to appellant, as Carlin falsely telling appellant that her driver's license had just been suspended, when it had not been suspended, so as to arguably undermine appellant's subsequent decision to consent.

{¶ 21} Appellant's unilateral position is unaccompanied by indicia from the record suggestive that appellant misunderstood Carlin's recitation of BMV form 55 as a

6.

notification that her driver's license was suspended, prior to her subsequent consent

decision, positive BAC reading, and OVI prosecution.

*Motion to Suppress Denial*

{¶ 22} On July 11, 2024, the trial court denied the motion to suppress, holding in relevant part,

> The defendant contends that she was misled by Officer Carlin's reading of BMV form 55. . .Officer Carlin read the notice of suspension paragraph at the end of the form advising appellant that her license was suspended [if appellant decided to refuse]. . .The State of Ohio contends that the defendant was not misled. . .The defendant understood her rights because she was advised of the length of the of [both] suspensions [contingent upon] if she refused or if she [consented] and [further contingent upon if she then] tested over the legal limit. . .After reading the mandatory language. . . The defendant was re-advised about the length of [both] suspensions if she refused or tested over the legal limit. [After multiple advisements on both options] the defendant chose [to consent to the BAC test]. . .The court finds. . .that defendant voluntarily consented. . .the defendant did not appear to be misled. . .[Appellant] was not coerced [into consent] by the officer's reading of the BMV form.

{¶ 23} On July 26, 2024, following the motion to suppress denial, appellant

entered a no contest plea to the OVI charge, and was sentenced to 180 days at the

Corrections Center of Northwest Ohio ("CCNO"), with 177 days suspended, and the

balance of three days ordered to be served in a driver's intervention program. Appellant

was placed on inactive probation, given a driver's license suspension, and ordered to pay

a fine and court costs. This appeal ensued.

*Assignment of Error: Was the Motion to Suppress Denial Proper?*

{¶ 24} In the sole assignment of error, appellant argues that the trial court erred in denying the motion to suppress. In support, appellant asserts that her consent to take a BAC test was invalid, based upon her argument that Carlin's recitation of BMV form 55 constituted falsely telling appellant that her driver's license had already been suspended prior to her decision to consent, compromising the consent.

{¶ 25} As a preliminary matter, we note that appellant's argument is contingent upon the applicability of R.C. 4511.191 implied consent notice requirements to this case, a case in which appellant did not refuse, but rather, consented to, a BAC test, and further contingent upon then finding that Carlin's recitation of BMV form 55's notice of suspension language constituted improper implied consent notice. We are not persuaded.

> As held by this court in *State v. Murray*, 2019-Ohio-4285, ¶ 9 (6th Dist.), Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When the trial court considers a motion to suppress, it acts as the factfinder and is in the best position to resolve factual questions and to evaluate the credibility of witnesses. *Id*. We, therefore, must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id*. Our role then is to independently determine, without deference to the trial court's conclusion, whether the facts satisfy the applicable legal standard. *Id*.

*R.C. 4511.191 Implied Consent Applicability*

{¶ 26} Appellant argues, in support of improper implied consent,

> This Court, in a different context, likewise uses the same standard to determine if a defendant acquiesced to a claim of lawful authority. *State v. Seem*, 2022-Ohio-3507, ¶ 25 (6th Dist.) (reasoning that Seem acquiesced rather than consented to the dump of his phone because the officer told

8.

Seem he was taking the phone regardless of [whether or not] he consented to the search). Here, the implied consent notice was improper. There was also an acquiescence, not consent.

{¶ 27} However, as held by this court in *State v. Henry*, 2010-Ohio-5171, ¶ 30-31 (6th Dist.),

> *R.C. 4511.191 is an implied-consent statute and is essentially civil and administrative in nature. It is, therefore, collateral to any criminal proceeding that may be instituted under R.C. 4511.19. State v. Tramonte (Aug. 27, 1993), 6th Dist. No. 92-OT-050. With respect to the admissibility of chemical tests in a criminal proceeding, we have held: 'While the failure to properly inform the defendant of the consequences of her refusal to submit to testing may very well preclude the suspension of his license pursuant to R.C. 4511.191 and R.C. 4511.193, there is no provision in R.C. 4511.19 that requires compliance with implied consent procedures as a condition of the admissibility of chemical test results in DUI prosecutions. Id.' accord State v. O'Neill (2000), 140 Ohio App.3d 48, 57, 746 N.E.2d 654. (Emphasis added).*

{¶ 28} Thus, given that the instant case involves consent, a .169 BAC reading, and a criminal prosecution, rather than a refusal triggering an administrative driver's license suspension, in accord with *Henry*, we find that R.C. 4511.191 implied consent considerations are inapplicable to this case. However, even assuming arguendo that implied consent considerations were applicable, appellant nevertheless failed to establish improper implied consent.

*Claim of Misrepresentation by Carlin*

{¶ 29} We have carefully reviewed the record, with particular scrutiny to the video footage of the communications between Carlin and appellant. The record does not show that Carlin falsely advised appellant that her license had been suspended prior to her

consent, or refusal, decision. The record does not show that Carlin falsely advised appellant that submission to a BAC chemical test was mandated.

{¶ 30} On the contrary, the record shows, in both the video footage and in the suppression hearing transcripts, that Carlin clearly, repeatedly advised appellant that she had a decision to make, and that the two available choices were either to consent to take a BAC test, or to refuse to take a BAC test. The record further shows that these two choices, and the consequences of each choice, were conveyed by Carlin to appellant both in the police cruiser following appellant's failure of field sobriety tests, and also subsequently read verbatim twice to appellant at the police station, all of which occurred prior to appellant's decision to consent to a BAC test.

{¶ 31} Carlin repeatedly explained that she would be reading the relevant BMV form to appellant, and noted to appellant again, just before reading the form, "[M]ake sure you listen up because this [form] is what we talked about in the car." After reading the form, Carlin says, "So take that all and consider it to make a decision on the blow." Nothing in the record suggests that appellant mistook the reading of the form as a suspension being imposed prior to the consent or refuse decision.

{¶ 32} We find that appellant's characterization of Carlin's recitation of the language of BMV form 55, "Your license. . .is now suspended. This suspension takes effect immediately", as demonstrating that Carlin falsely, "told [appellant that] her license was [already] suspended when it was not, before she was asked to decide if she should submit to a breath test", is devoid of the context of it being the recitation of a form

10.

prior to the decision, after it was plainly explained as being such. Appellant's characterization is devoid of supporting evidence.

*Inapplicability of Seem*

{¶ 33} With respect to our implied consent decision in *Seem*, relied upon by appellant, we find that it is materially distinct from this case. In *Seem*, a case in which evidence contained on a defendant's mobile phone was relevant to an investigation of the defendant pandering obscenity and sexual matter involving a minor, it was undisputed that an officer falsely stated to the defendant, "that he would be taking his phone without a warrant, there wasn't anything Seem could do about that, and Seem would not get the phone back until it was dumped. . .He did not present Seem with a choice as to whether or not the phone would be seized." *Seem*, 2022-Ohio-3507, at ¶ 21.

{¶ 34} On the basis of the defendant being falsely advised that he had no choice regarding the seizure of his phone, we found that the defendant's consent was compromised on the basis of that misrepresentation by law enforcement to the defendant.

{¶ 35} Such a scenario is not present in this case. As held above, the record is replete with evidence showing that Carlin did not do or say anything to falsely convey to appellant that she had no choice in whether to consent, or refuse, to take a BAC test. Appellant was not de facto denied a choice in this case, via a false representation, as occurred in *Seem*. Accordingly, our holding in *Seem* does not support appellant's position in this case.

11.

*Motion to Suppress Decision Supported by Competent, Credible Evidence*

**{¶ 36}** Based upon the foregoing, we independently determine that the trial court's finding in the suppression hearing, that, "[defendant] understood the consequences involved in deciding whether to take the [BAC] chemical test and was not coerced by the officer's reading of the BMV form" was supported by competent and credible evidence.

**{¶ 37}** Wherefore, we find appellant's assignment of error not well-taken. The judgment of the Oregon Municipal Court is hereby affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, P.J.
_____
JUDGE

Myron C. Duhart, J.
CONCUR.
_____
JUDGE

Christine E. Mayle, J.
CONCURS WRITING
SEPARETLY.
_____
JUDGE

**MAYLE, J., concurring.**

{¶ 38} I concur with the majority's resolution of the assignment of error raised by appellant, Allexys Hendricks.  I write separately to provide additional reasoning.

{¶ 39} "As part of obtaining the privilege to drive in Ohio, a driver implicitly consents to a search, through means of a chemical test, to determine the amount of intoxicating substances in the driver's body upon the driver's arrest for DUI."  *State v. Hoover*, 2009-Ohio-4993, ¶ 14; R.C. 4511.191(A)(2).  Beyond a person's consent to a chemical test being implied, "'[o]ne accused of intoxication has no constitutional right to refuse to take a reasonably reliable chemical test for intoxication.'"  *Id.* at ¶ 19, quoting *Westerville v. Cunningham*, 15 Ohio St.2d 121 (1968), paragraph two of the syllabus.  The Supreme Court has also concluded that "[a]sking a driver to comply with conduct [s]he has no right to refuse and thereafter enhancing a later sentence upon conviction does not violate the constitution."  *Id.* at ¶ 22.

{¶ 40} Before requesting that a person submit to a chemical test, the arresting officer must inform the person of the information in R.C. 4511.192(B).  R.C. 4511.192(A).  That information is found in BMV Form 2255.  *State v. Hamrick*, 2017-Ohio-4211, ¶ 7 (9th Dist.).  The officer complies with R.C. 4511.192(B) by reading the top portion of BMV Form 2255 verbatim to the arrestee.  *Bryan v. Hudson*, 77 Ohio St.3d 376, 380 (1997).  But courts consistently find that an officer's misstatements or additional comments when reading Form 2255 do not invalidate the arrestee's consent.  *See, e.g., Hamrick* at ¶ 9 ("Any extraneous information provided by Officer Sabo to Mr.

13.

Hamrick after the officer read BMV Form 2255 aloud to Mr. Hamrick was immaterial and has no bearing upon the voluntariness of Mr. Hamrick's consent."); *State v. Eaton*, 2010-Ohio-6065, ¶ 15, 18 (3d Dist.) (officer incorrectly informing defendant that legal limit for commercial driver's license holder was .02 instead of .04 did not coerce him into taking breathalyzer test); *State v. Morgan*, 2009-Ohio-2795, ¶ 65 (11th Dist.) (officer's comment that "the judge does not like it when a person refuses to be tested" did not render defendant's consent involuntary); *Columbus v. Dixon*, 2008-Ohio-2018, ¶ 7 (10th Dist.) (officer telling defendant that she could go home if she took breathalyzer test but would be held in custody for 12 to 24 hours if she refused did not coerce her into taking the test); *Twinsburg v. Lisch*, 2000 WL 150755, *6 (9th Dist. Feb. 9, 2000) (officer's "minor misstatements" regarding occupational driving privileges did not affect implied consent); *State v. Tino*, 1997 WL 106339, *2 (1st Dist. Mar. 5, 1997) (incorrect information about driving privileges did not affect implied consent).

{¶ 41} Importantly, "upon arrest, an improper or incomplete recitation of BMV Form 2255, or otherwise improper or incomplete advice given to a defendant concerning his or her rights under the implied consent statute, is not of constitutional significance, and would not support the application of the exclusionary rule to suppress the evidence obtained." *State v. Rawnsley*, 2011-Ohio-5696, ¶ 16 (2d Dist.). That is, for the exclusionary rule to apply, Hendricks would have to allege that her constitutional rights—not her statutory rights—were violated. *State v. Calo-Jimenez*, 2023-Ohio-2562, ¶ 33 (1st Dist.), citing *State v. Campbell*, 2022-Ohio-3626, ¶ 22.

14.

{¶ 42} Here, the evidence shows that Carlin, the arresting officer, read the top portion of Form 2255 to Hendricks verbatim. Because Carlin did that, it is of no consequence that she also read the portion of Form 2255 telling Hendricks that her license was suspended. *See Hamrick* at ¶ 9 (any extraneous information provided by the officer after he read Form 2255 was immaterial and did not affect the voluntariness of the driver's consent). Additionally, Hendricks has not alleged—let alone proven—any violations of her constitutional rights based on Carlin's claimed failure to comply with R.C. 4511.192, so she is not entitled to have the results of her breath test suppressed. Because the majority reaches the same conclusion, I concur.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.