[Cite as *State v. Runyon*, 2016-Ohio-5730.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**GREENE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO.   2015-CA-63 |
| | : | |
| v. | : | T.C. NO. 15CR102 |
| | : | |
| PHILLIP J. RUNYON | : | (Criminal Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___9th___ day of _____September_____, 2016.

. . . . . . . . . .

ANU SHARMA, Atty. Reg. No. 0081773, Assistant Prosecutor, 61 Greene Street, Xenia,
Ohio 45385
        Attorney for Plaintiff-Appellee

CHARLES M. BLUE, Atty. Reg. No. 0074329, 401 E. Stroop Rd., Kettering, Ohio 45429
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} After the trial court overruled his motion to suppress, Phillip Runyon pled no contest in the Greene County Court of Common Pleas to an amended charge of illegal assembly or possession of chemicals for manufacture of drugs, a third-degree felony; two

additional charges were dismissed. The trial court imposed an agreed sentence of 36 months in prison and restitution of $375.

{¶ 2} Runyon appeals from his conviction, claiming that the trial court erred in denying his motion to suppress evidence that was seized from the home where he allegedly stayed and from the motor vehicle he allegedly drove, in addition to any statements he made at that time. For the following reasons, the trial court's judgment will be affirmed.

### I. Standard of Review

{¶ 3} "When confronted with a motion to suppress, a trial court assumes the role of the trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." *State v. Burchett*, 2d Dist. Montgomery No. 20167, 2004-Ohio-3101, ¶ 3, citing *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist. 1993). When reviewing a ruling on a motion to suppress, broad deference is given to the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* However, although we give deference to the trial court's findings of fact, we must apply those facts de novo to the requirements of the Fourth Amendment. *Ornelas v. United States*, 517 U.S. 690, 691, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

### II. Factual and Procedural History

{¶ 4} On April 9, 2015, Runyon filed a motion to suppress all evidence recovered in the search of his person, the motor vehicle he allegedly drove, and the home at which he allegedly stayed. Runyon argued that law enforcement lacked probable cause and consent to search his person, the motor vehicle, and his home, in addition to lacking the requisite probable cause to arrest and detain him. He asserted the evidence was

gathered in violation of the Fourth and Fourteenth amendments of the United States Constitution and Article I, Section 14 of the Ohio Constitution.

{¶ 5} On July 8, 2015, a suppression hearing was held.[1]  Runyon sought to suppress the evidence obtained from both warrants.  The first warrant and affidavit, admitted as Exhibit 1, is a search warrant for a particular address in Fairborn ("Premises Search Warrant").  The second warrant and affidavit, admitted as Exhibit 2, is a search warrant for a 2003 grey Ford Taurus, Registration Number GDM1785 ("Vehicle Search Warrant").

{¶ 6} The events which led to Runyon's motion to suppress were outlined in the Premises Search Warrant, the Vehicle Search Warrant, and testimony from Detective Ben Roman of the Fairborn Police Department.  Detective Roman provided the following reiteration of facts through his testimony and the warrant affidavits.

{¶ 7} Detective Roman is a member of the Greene County A.C.E. Drug Task Force, which investigates drug traffic complaints, meth labs, and marijuana grows.  The Task Force received information while executing a search warrant in November of 2012 that Runyon was manufacturing methamphetamine and was dating a female named Tiffany Seiber.  Seiber was, at that time, being held in the Greene County Jail. Additionally, the Task Force learned Runyon's phone number, which was later corroborated through New World, a law enforcement database that includes contact information for those who have come in contact with Greene County law enforcement. After receiving this information, the detective began to monitor the calls between

---

[1] A second suppression hearing was held on September 8, 2015, but focused solely on the *Miranda* warnings and interview of Runyon at the police station.  No information provided in the second hearing is relevant to this appeal.

Runyon's telephone and the Greene County Jail. During these monitored phone calls, a subject named "Phil", at Runyon's number, discussed getting "beans" with Seiber. Detective Roman clarified "beans" commonly refers to pseudoephedrine pills.

{¶ 8} Detective Roman further testified that on January 20, 2015, a member of the Task Force received an e-mail from the Beavercreek Police Department alerting the Task Force to suspicious behavior at a local ice-cream shop. The store manager of the shop had reported that "a suspicious [male] subject was buying dry ice and had purchased approximately four pounds of dry ice at a time, and he believed it may be meth related." The store manager's report further provided a registration for the vehicle utilized by the male, GDM1785. After further investigation, Detective Roman learned that the vehicle was registered to the same Tiffany Seiber in the Greene County Jail.

{¶ 9} On January 27, 2015, the Fairborn Police Department obtained an anonymous tip that Runyon was manufacturing methamphetamine at a particular address in Fairborn. This anonymous informant added that Runyon utilized two vehicles, one with the registration of GDM1785 and one with DA48HT. After further investigation, the GDM1785 vehicle was found to be a grey 2003 Ford Taurus.

{¶ 10} Detective Roman then surveyed the Fairborn property identified in the tip, during which time he observed the DA48HT vehicle described by the anonymous informant. The following day, the Fairborn Police Department obtained a second concerned citizen tip that Runyon was manufacturing methamphetamine at the same Fairborn address.

{¶ 11} The following day, the detective performed a MethCheck (a database that monitors the frequency an individual purchases pseudoephedrine) on Runyon that

displayed he had purchased pseudoephedrine 14 times between June of 2014 and January of 2015. This check also provided that Runyon had been blocked from purchasing pseudoephedrine four additional times within that period.

{¶ 12} After performing the MethCheck, the detective and a fellow Task Force member conducted a trash pull at the Fairborn address on February 2, 2015. The detectives found burnt foil and six plastic bags with white residue, which field tested positive for methamphetamine. The same day, a separate Task Force member prepared a photo-lineup, including Runyon, which was shown to the ice-cream shop manager by a Beavercreek Police officer. The manager identified Runyon as the subject of the suspicious dry ice purchase in January.

{¶ 13} The following day, February 3, 2015, Detective Roman did a second surveillance of the address, during which he noted both the 2003 Ford Taurus and the second vehicle that Runyon allegedly used parked at the home. This discovery prompted the detective to do another search on Runyon through the New World system, which provided that he had two active warrants for his arrest.

{¶ 14} Using the information and evidence collected, the detective obtained a search warrant for the Fairborn address. A Fairborn Municipal Court Judge signed the warrant on February 4. The Premises Search Warrant was executed on February 5. Upon serving the search warrant, Runyon was located within the residence and taken into custody and removed from the premises, an action taken due to the active warrants for his arrest. After Runyon was removed, the Premises Search Warrant was executed.

{¶ 15} During the execution of the Premises Search Warrant, Detective Roman and other officers spoke to individuals present at the residence. One of these

individuals, Natasha Randall, represented herself as Runyon's girlfriend and told the officers at this time that she believed there was possibly an active "meth cook" inside the trunk of the 2003 Ford Taurus. She further described the area in which she believed that car was currently located.

{¶ 16} In addition to this testimony given by Detective Roman at the suppression hearing, the affidavit sworn to by the detective in support of the Vehicle Search Warrant details further the communications with Randall that led to the discovery of the "one pot methamphetamine production." The affidavit states that Randall told the officers that Runyon utilized a vehicle belonging to Tiffany Seiber, a 2003 Ford Taurus. Randall stated that Runyon had told her that all his meth production materials were located in the vehicle. Further, Runyon had told Randall that "the baby" was in the trunk. Randall described the bottle Runyon utilized in his meth production as a clear plastic bottle with a red lid. The detective's experience and training with meth production led him to the conclusion that "the baby" is a common reference to the bottle in which methamphetamine is manufactured.

{¶ 17} After learning this information from the interview with Randall, the officers located the 2003 Ford Taurus and spoke to a resident at the location provided. This resident, Burton Dewayne Ison, informed the officer that Runyon had dropped the vehicle off the night before and was planning on picking it up the following day. Ison further informed the officers that the vehicle belonged to Runyon's girlfriend, Tiffany.

{¶ 18} Upon learning this information, the officers at the residence contacted a prosecutor, and informed her that the bottle utilized to manufacture meth was inside the trunk of the 2003 Ford Taurus and that it was volatile. The prosecutor then advised that,

due to the exigent circumstances, the officers were to enter the vehicle and neutralize any volatile bottles or methamphetamine-making materials.

{¶ 19} The affidavit indicates that the officers opened the trunk to the 2003 Ford Taurus with the keys, which had been obtained by the detective during the execution of the Premises Warrant; the officers immediately located the clear bottle with a red lid as described by Randall, and identified it as an active one-pot methamphetamine production. After the one-pot was rendered neutral and properly disposed of, no further search was conducted on the vehicle, and it was towed to the Fairborn Police Department.

{¶ 20} The day following the execution of the Premises Search Warrant, February 6, the Vehicle Search Warrant was signed and issued by a Judge. The Vehicle Search Warrant and the supporting affidavit contain the same information as the Premises Search Warrant, with the addition of the evidence provided from the execution of the Premises Search Warrant. The additional supporting evidence includes the information learned from Randall, the information learned from Ison, the evidence of methamphetamine production seized at the Fairborn Address, and the evidence seized in the search of the 2003 Ford Taurus's trunk.

{¶ 21} On February 11, 2015, Runyon was indicted on three counts: (1) illegal manufacture of drugs, a felony of the first degree; (2) illegal assembly or possession of chemicals for the manufacture of drugs, a felony of the second degree; and (3) aggravated possession of drugs, a felony of the fifth degree. Runyon originally entered a plea of not guilty and, he subsequently sought to suppress the evidence obtained from the home and his motor vehicle, as well as statements he made at the police station after his arrest on February 5.

{¶ 22} After hearing Detective Roman's testimony and reviewing both warrants and affidavits, the trial court denied Runyon's motion to suppress in all respects. Of relevance to this appeal, the trial court stated that the warrantless search of the vehicle's trunk was supported by probable cause and the lack of a search warrant was excused by the exigent circumstances. The court reasoned that the trunk search lasted only long enough to locate, neutralize, and dispose of the threat; the totality of the information supported that a methamphetamine laboratory was located in the trunk of the vehicle; and that the exigent circumstances and public danger caused by active methamphetamine made the search constitutionally valid.

{¶ 23} With regards to the Vehicle Search Warrant, the trial court held the warrant was based on sufficient probable cause. Accordingly, the trial court held that, "the totality of the numerous reliable, corroborated tips, surveillance, first-hand observations by law enforcement of the presence of an active methamphetamine laboratory in the trunk of the subject vehicle, and relevant background information constitute sufficient probable cause that evidence of methamphetamine production would be found in the vehicle."

{¶ 24} Runyon appeals from the trial court's judgment, claiming that the trial court erred in overruling his motion to suppress. Although Runyon's assignment of error could encompass all aspects of his motion to suppress, he focuses solely on the warrantless search of the 2003 Ford Taurus and the subsequent search based on the Vehicle Search Warrant. Runyon has broken his assignment into two issues presented for review.

### III. Exigent Circumstances Exception to Warrant Requirement

{¶ 25} First, Runyon argues the officers searched the trunk of the 2003 Ford Taurus without probable cause and without a warrant. Consequently, he argues that

because probable cause was lacking, the exigent circumstance exception to the warrant requirement fails, rendering the search unconstitutional.

*A. Exigent Circumstance Analysis*

**{¶ 26}** The Fourth Amendment to the United States Constitution provides that search warrants shall not be issued "but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched." The Ohio Supreme Court has held Article I, Section 14 of the Ohio Constitution extends the same protections. *State v. Jones*, 143 Ohio St.3d 266, 2015-Ohio-483, 37 N.E.3d 123, ¶ 12, citing *State v. Smith*, 124 Ohio St, 3d 163, 2009-Ohio-6426, 920 N.E.2d 949, ¶ 10, fn. 1.

**{¶ 27}** Exigent circumstances are a well-established exception to the Fourth Amendment warrant requirement. *State v. Lam*, 2d Dist. Montgomery No. 25336, 2013-Ohio-505, ¶ 13; *State v. Berry*, 2d Dist. Greene No. 2005-CA-107, 2006-Ohio-3035, ¶ 12. The exigent circumstances doctrine requires probable cause plus exigent circumstances in order to be lawful. *State v. Cranford*, 2d Dist. Montgomery No. 20633, 2005-Ohio-1904, ¶ 18, citing *Kirk v. Louisiana*, 536 U.S. 635, 638, 122 S.Ct. 2458, 153 L.Ed.2d 599 (2002).

**{¶ 28}** With regards to exigent circumstances arising from methamphetamine production specifically, Ohio enacted R.C. 2933.33 (A) which provides:

> If a law enforcement officer has probable cause to believe that particular premises are used for the illegal manufacture of methamphetamine, for the purpose of conducting a search of the premises without a warrant, the risk of explosion or fire from the illegal manufacture of methamphetamine causing injury to the public constitutes exigent circumstances and

reasonable grounds to believe that there is an immediate need to protect the lives, or property, of the officer and other individuals in the vicinity of the illegal manufacture.

R.C. 2933.33(A).

{¶ 29} We have applied this statute to allow officers to conduct searches without a warrant when they had probable cause to believe methamphetamine production was occurring. *State v. Parson*, 2d Dist. Montgomery No. 23398, 2010-Ohio-989, ¶ 15. In *Parson*, we held that the officer's training and experience with methamphetamine production supported a finding that the officer believed the methamphetamine activity in the home was dangerous to those in close proximity. *Id.* It was after the threat was assessed by an officer who had personal knowledge of the safety threats caused by meth production that an exigent circumstance was present and the warrantless search was permitted . *Id.*

{¶ 30} We are hesitant to hold that a legislative statement alone creates a per se exigent circumstance. However, such a holding is not necessary in this case, as the testimony from Detective Roman displayed he has personal knowledge of the volatile nature of methamphetamine production and the safety risks it encompasses. Further, he stated the officers who entered the trunk without a warrant also had personal knowledge of these risks. Specifically, the detective stated that throughout the course of his training, he has dealt personally with over 30 meth labs; knows of the possibility of explosion and volatile nature of methamphetamine production; and that the two detectives who opened the trunk were qualified to neutralize potentially volatile methamphetamine production.

{¶ 31} Neither the State nor Runyon argues that the "one-pot" discovered in the 2003 Ford Taurus does not meet the standard for an exigent circumstance. Both sides agree that a methamphetamine production laboratory creates an exigent circumstance, and because of Detective Roman's experience in the field, we agree. However, Runyon argues that the officers did not have probable cause to believe that a methamphetamine lab was in the vehicle, and therefore, the exigent circumstance exception does not apply.

*B. Probable Cause Analysis*

{¶ 32} The crux of Runyon's first argument rests on the notion that the officers did not have probable cause to believe an exigent circumstance existed in the 2003 Ford Taurus trunk. Probable cause is not determined by any specific "test", but by the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). It is judged on a practical, nontechnical conception – meaning it is a "factual and practical consideration of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.*, citing *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

{¶ 33} We have held that probable cause is "not whether it is reasonable to believe items to be seized might be found in the place to be searched," but instead whether the evidence provides reasonable cause to believe the items would likely be found in the place to be searched. *State v. Cole*, 2d Dist. Montgomery No. 23058, 2009-Ohio-6131, ¶ 23. With regards to drug cases, there must exist an evidentiary link between the suspected drug activity and the area before the probable cause determination may be made. *Id.* at ¶ 26. A mere reasonable belief, without support from evidence linking the area to the drug activity is not enough to form probable cause. *State v. Perez*, 2d Dist.

Montgomery No. 26518, 2015-Ohio-1010, ¶ 19.

{¶ 34} Here, the trial court stated in its judgment denying Runyon's motion to suppress that "[t]he totality of the plethora of informant tips, corroborated information, and background information discussed above sufficiently constitute not only a reasonable belief, but also probable cause that a methamphetamine laboratory was located in the trunk of the 2003 grey Ford Taurus * * * at the time of the warrantless search."  We agree with the trial court that the record supports finding of probable cause.

{¶ 35} When the officers were executing the Premises Search Warrant, an identified informant made statements indicating that she knew Runyon well, told them that he produced methamphetamine, knew the means by which he produced the methamphetamine, and how frequently he produced it.  She informed the police that Runyon had utilized the Taurus the night prior, and that Runyon told her he had an active methamphetamine lab in the trunk.  She described with specificity the materials Runyon used in production of methamphetamine.  Ultimately, she told the officers where Runyon had dropped the car off ("Dewayne's" house) and why (due to mechanical difficulties).  Upon receiving this information, the officers corroborated the informant's information by sending officers to the given address.  Upon arrival, the car described was at the given address.  The officers then spoke to the owner of the home, Burton Dewayne Ison, who said Runyon had dropped the car off as described by the informant.

{¶ 36} A reasonable person, given the prior background knowledge of Runyon and his involvement with methamphetamines, in addition to the informant's relationship with Runyon and her ability to communicate details of his methamphetamine production process, would form a belief that an active methamphetamine lab would be found in that

trunk. Further, there is evidence linking the vehicle in question to the production of methamphetamines. The appellant argues that information given by one informant, without corroboration, is not enough to form probable cause. However, the information provided by the identified informant was corroborated by speaking to the resident at the address provided. The informant was cooperative with the police and relayed many corroborated facts about Runyon's methamphetamine production and use of the vehicle, and therefore, there was no reason to question her truthfulness about the meth cook in the trunk.

{¶ 37} In addition, there was substantial information linking Runyon's methamphetamine production with the 2003 Ford Taurus. First, the vehicle was identified as the vehicle Runyon used to purchase production materials by the ice-cream shop manager. Runyon told the identified informant he had "the baby" in the trunk, along with all his other production materials in the vehicle. The informant stated Runyon had purchased methamphetamine production materials in the vehicle at the ice-cream shop. Finally, several informants described the car as the one Runyon utilized and as belonging to Tiffany Seiber.

{¶ 38} Some courts have held that a "reasonable basis" standard applies in exigent circumstances, rather than a "probable cause" standard, however, we need not address this issue. We find, as did the trial court, that the totality of the circumstances provides that probable cause was established. Accordingly, the trial court did not err in finding the exigent circumstances exception to be applicable.

### IV. Vehicle Search Warrant Analysis

{¶ 39} In his second argument, Runyon argues that the Vehicle Search Warrant

was issued in violation of the exclusionary rule because it was issued based on evidence seized as a result of the improper search of the 2003 Ford Taurus's trunk.

{¶ 40} "The exclusionary rule is a judicially created sanction designed to protect Fourth Amendment rights through its deterrent effect. Under the rule, the state is precluded from using evidence obtained in violation of the Fourth Amendment." (Citation omitted.) *State v. Brown*, 142 Ohio St.3d 92, 2015-Ohio-486, 28 N.E.3d 81, ¶ 12.

{¶ 41} In asserting a violation of the exclusionary rule, Runyon must show that the evidence used by the State in obtaining the Vehicle Search Warrant was evidence seized in violation of his Fourth Amendment rights. Because we find the warrantless search of the 2003 Ford Taurus's trunk to be proper under the exigent circumstance exception to the warrant requirement, there is no evidence that was used in obtaining the warrant that was gathered in violation of Runyon's Fourth Amendment rights.

### V. Conclusion

{¶ 42} Runyon's assignment of error is overruled, and the trial court's judgment will be affirmed.

. . . . . . . . . . . .

FAIN, J. and HALL, J., concur.

Copies mailed to:

Anu Sharma
Charles M. Blue
Hon. Stephen A. Wolaver