[Cite as *State v. Seem*, 2022-Ohio-3507.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

State of Ohio                                            Court of Appeals No.  S-21-014

        Appellee                                        Trial Court No.  20-CR-628

v.

Jeremy Seem                                         **DECISION AND JUDGMENT**

        Appellant                                       Decided:  September 30, 2022

* * * * *

Beth A. Tischler, Sandusky County Prosecuting Attorney, and
Alexis M. Otero, Assistant Prosecuting Attorney, for appellee.

Andrew Schuman, for appellant.

* * * * *

**MAYLE, J.**

**{¶ 1}** Defendant-appellant, Jeremy Seem, appeals the August 26, 2021 judgment of the Sandusky County Court of Common Pleas, convicting him of two counts of pandering obscenity involving a minor and two counts of pandering sexual matter involving a minor, and sentencing him to a total indefinite term of eight to 12 years in prison.  For the following reasons, we reverse the trial court judgment.

## I.    Background

{¶ 2} Jeremy Seem was indicted on August 21, 2020, on seven counts of pandering obscenity involving a minor, violations of R.C. 2907.321(A)(1), and four counts of pandering sexual matter involving a minor, violations of R.C. 2907.322(A)(1), all second-degree felonies.  These charges were filed after obscene or sexual photos and videos of minors were found on Seem's cellphone.

{¶ 3} Seem moved to suppress the evidence retrieved from his cellphone.  He claimed that then-Detective Zachary Zender, of the Sandusky County Sheriff's Department, unlawfully seized his phone, then searched it, without a warrant.  The state responded that no warrant was required because Seem consented to the search and seizure of his phone.  Following an evidentiary hearing on April 5, 2021, the trial court denied Seem's motion in a written decision and judgment entry journalized on May 12, 2021.  It found that Zender possessed probable cause to believe that Seem's phone contained evidence of illegal activity, which may have been deleted if the phone was left in Seem's possession, thus the phone was lawfully seized without a warrant.  It further found that Seem consented to the seizure and search of his phone.

{¶ 4} After the trial court denied his motion to suppress, Seem entered a plea of no contest to two counts of pandering obscenity involving a minor and two counts of pandering sexual matter involving a minor, in exchange for the dismissal of the remaining seven counts.  The trial court accepted Seem's plea, found him guilty, and

2.

sentenced him to eight years in prison on each count, to be served concurrently, for a total indefinite term of eight to 12 years in prison.

{¶ 5} Seem appealed. He assigns the following errors for our review:

1. The trial court erred when it failed to suppress evidence seized from a search of Mr. Seem's cellular phone when such evidence was seized without a warrant and without a valid warrant exception.

2. The indeterminate sentence violates the Ohio and United States Constitutions.

## II. Law and Analysis

{¶ 6} In his first assignment of error, Seem challenges the trial court's denial of his motion to suppress. Seem argues that his phone was seized without a warrant and without a valid exception to the warrant requirement. He maintains that he did not give express consent to the search and seizure of his cellphone, and to the extent that he permitted Zender to seize, then search, his phone, he merely acquiesced to Zender's display of authority, which does not constitute valid consent.

{¶ 7} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When the trial court considers a motion to suppress, it acts as the factfinder and is in the best position to resolve factual questions and to evaluate the credibility of witnesses. *Id.* We, therefore, must accept the trial court's findings of fact if they are supported by

3.

competent, credible evidence. *Id.* Our role then is to independently determine, without deference to the trial court's conclusion, whether the facts satisfy the applicable legal standard. *Id.*

### A. The Evidence Adduced at the Suppression Hearing

{¶ 8} We begin by summarizing the evidence that was presented at the suppression hearing. One witness testified at the hearing—then-Detective Zachary Zender—and the following evidence was elicited.

{¶ 9} In July of 2020, the Sandusky County Sheriff's Department received information that Seem was in a chat room "talking to another individual about inappropriate things, possibly putting pictures of his daughter on this website, sharing them, and some of the comments that were being made that there was possibly some sexual misconduct." On July 23, 2020, Seem voluntarily appeared at the Sheriff's Office where Zender interviewed him. Seem was not under arrest.

{¶ 10} Seem had not brought his phone to the interview, so after Zender finished questioning him, he asked Seem if he could go to Seem's home and look at his phone. Seem said yes, and Zender followed Seem to his residence. Seem got his phone, which was password-protected, and opened it for Zender. Zender looked to see what apps were on the phone and he browsed through Seem's photographs. The app Zender was looking for was not on the phone. Seem said he deleted it because it was not being used. Seem

4.

was sober, they were in his garage, he knew why Zender was talking to him, and he understood the nature of the allegations.

{¶ 11} Zender and Seem's interaction was recorded and the recording was played at the hearing. Zender told Seem that he spoke with his supervisor on the way over and his supervisor was not comfortable with Zender just *looking* at the phone—he wanted to get Seem's phone "dumped"—i.e., to extract data from the phone, including deleted data and photos. Zender told Seem that this could be accomplished in "two different ways." He could take the phone and get a warrant to search its contents. Or he could take the phone and with Seem's consent, he could search its contents without a warrant. Zender explained:

> Zender: I can take your phone and I can do a search warrant and go that route, which will take longer.
>
> Seem: Sure.
>
> Zender: Which I'm guessing, from what you're telling me, there's nothing going to be on here.
>
> Seem: Right.
>
> Zender: But, I -- and I guess in a way it is better for you if we can dump it. I might even be able to get it somewhere tomorrow morning. And get it back tomorrow.
>
> Seem: Okay.

5.

Zender: If I can do that, then I can try to get your phone back to you -- I could probably leave it maybe at the dispatch center or the jail and then you could come pick it up when you get off work.

Seem: Mmhmm.

Zender: The downside is I don't know who is going to be available tomorrow and it might have to go 'til Monday. And I know it's a long time to go without your phone.

Seem: Right.

Zender: Umm -- I guess that's the deal. Is I could try to do it tomorrow morning. I know that there's a guy up in Perrysburg. He's usually pretty quick. He'll probably have it done -- I could even ask him if he could maybe speed-track it for me if I take it up there. Maybe I'll go get something to eat, come back and pick it up.

Seem: Okay.

Zender: If not, like I said, I'll just have to take the phone. And then I'll have to probably next week get a search warrant, get it signed, and I'll try to get it back to you sometime next week.

Seem: Okay. **So you'll take it now without a search warrant?**

Zender:  **Correct**.  Yeah, and the reason why I'm going to take it now and I can take it now is because if I leave it here without one, the odds that if there is something on here that you can either reset your phone.

Seem:  Right.

Zender:  So it's something I can do -- I'm not going to get in your phone without a search warrant.

Seem:  Right.

Zender:  But because the chance of things being destroyed, evidence being destroyed, if I leave it here.  **I need to take it with me now**, if that makes sense.

Seem:  Yeah, **I mean there's not really much I can do about it**.  I guess.

Zender:  **Right now, there's not**.  But, what I would like to do is, is make it more convenient just for you.  'Cause I'm not trying to be -- make it inconvenient or be a dick about it or anything like that.

Seem:  Right.

Zender:  But, if I do it, there's nothing on there, that just helps me say, "Okay, guess what, he told me he posted that stuff.  It's a fantasy thing that he was involved in and it didn't go farther than that."

Seem:  Okay.

Zender: You know what I'm saying?

Seem: Yeah, I got you.

Zender: Because -- honestly it helps you more than it hurts you, but it is going to inconvenience you.

Seem: Yeah. **Yeah, I mean if that's the option, go ahead**.

Zender: Okay.

Seem: I mean, take it and see what you can do with it.

(Emphasis added.) With the understanding that Zender would be taking his phone either way, Seem consented to Zender searching it without a warrant.

{¶ 12} Zender conceded at the hearing that he saw nothing on the phone that led him to believe that it had been used for illegal activity. Seem did admit to having deleted a particular app on his phone through which messages had been sent, but Zender saw no photographs or other data he believed were illegal. Zender claimed, however, that "a lot of data that is deleted off of a device like that is retained in some shape or form that might not be seeable to the naked eye."

{¶ 13} Zender was asked specifically about whether he saw anything on Seem's phone that provided him with probable cause that the phone had been used for illegal activity; he confirmed that he did not:

Q: From the standpoint of generating probable cause to believe that the phone was used for illegal activity, nothing that you saw on that phone

8.

on July 23 of 2020 was discernible to you as evidence of illegal activity on that phone, would that be accurate?

A: It would be accurate that I did not see anything on the phone at that point in time. However, through my experience and doing these cases in the past, if there – if he was doing these things on that device, there is a very high likelihood that that might still be retained in some shape or form.

* * *

A: But not that – I did not see anything that day.

{¶ 14} Zender also made clear that he told Seem he would be taking the phone without seeking a warrant regardless of Seem's consent. He made the decision to seize the phone even before arriving at Seem's house. "That was going to happen whether [Seem] objected or not." The only question was whether Seem's consent would obviate the need for Zender to apply for a search warrant to "dump" the phone. Zender conceded that Seem told him "to go ahead and take [the phone] and see what [he] can do with it" only after being told that the phone would be taken anyway and that there was really nothing he could do about that. Seem did not give consent for Zender to take the phone:

A: I recall saying that I was going to take the phone.

Q: Okay. Prior to that time, did my client give you consent to take that phone?

A: He did not.

Q: Okay. And at that point in time, in listening to the audio, it would be clear to any individual that your intention was to seize and take that phone into custody; wouldn't you agree?

A: Yes.

Q: Alright. That was going to happen whether [Seem] objected or not, correct?

A: At that point in time, yes.

**B. Constitutional Protections Against Unreasonable Searches and Seizures**

{¶ 15} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution protect citizens from unreasonable searches and seizures and require that a warrant be obtained "particularly describing the place to be searched and the person and things to be seized." *State v. Murrell,* 94 Ohio St.3d 489, 493, 764 N.E.2d 986 (2002); *State v. Kinney*, 83 Ohio St.3d 85, 87, 698 N.E.2d 49 (1998). A warrantless search and seizure is per se unreasonable unless one of the following judicially-recognized exceptions applies: "(a) [a] search incident to a lawful arrest; (b) consent signifying waiver of constitutional rights; (c) the stop-and-frisk doctrine; (d) hot pursuit; (e) probable cause to search, and the presence of exigent circumstances; or (f) the plain-view doctrine." *State v. Akron Airport Post No. 8975, Veterans of Foreign Wars of U.S.,* 19 Ohio St.3d 49, 51, 482 N.E.2d 606 (1985).

10.

"The state bears the burden of proving that one of these exceptions applies in order for evidence seized as a result of a warrantless search to survive a motion to suppress." *State v. Smith,* 73 Ohio App.3d 471, 475, 597 N.E.2d 1132 (6th Dist.1991), citing *State v. Kessler*, 53 Ohio St.2d 204, 207, 373 N.E.2d 1252 (1978).

### C. The Trial Court Judgment

{¶ 16} The trial court found that with respect to the seizure of the phone (1) "[b]ased on the interview and subsequent conversation the Detective would have had probable cause that the phone contained some evidence of illegal activity," and (2) "the Detective articulated that if he were to leave the phone with the Defendant the opportunity to destroy evidence was prevalent." Although not expressly stated as such, this means that the trial court found that probable cause plus exigent circumstances justified the warrantless seizure of the phone.

{¶ 17} The court further found that Seem consented to both the seizure and the analysis of the phone when he told Zender to "go ahead, take it and see what you can do with it." It explained that the conversation between Zender and Seem focused on "convenience and intrusiveness," and Seem's choice to get his phone back sooner rather than later "[did] not rise to coercion or an acquiescence to authority," as Seem had contended.

11.

{¶ 18} We first address the court's conclusion that Seem consented to Zender's seizure of his phone. We then address its conclusion that probable cause plus exigency justified Zender's warrantless seizure of the phone.

## D. The Consent Exception

{¶ 19} The consent exception to the warrant requirement is "jealously and carefully drawn." *Jones v. United States*, 357 U.S. 493, 499, 78 S.Ct. 1253, 2 L.Ed.2d. 1514 (1958). "When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given." *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d. 797 (1968). That is, "the state must show by 'clear and positive' evidence that the consent was 'freely and voluntarily' given." *State v. Posey*, 40 Ohio St.3d 420, 427, 534 N.E.2d 61 (1988), quoting *Bumper* at 548. "'Clear and positive evidence' is the equivalent of clear and convincing evidence." *State v. Jones*, 187 Ohio App.3d 478, 2010-Ohio-1600, 932 N.E.2d 47 (6th Dist.), citing *State v. Danby*, 11 Ohio App.3d 38, 41, 463 N.E.2d 47 (6th Dist. 1983). Clear and convincing evidence is "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases." *In re Estate of Haynes*, 25 Ohio St.3d 101, 104, 495 N.E.2d 23 (1986).

12.

{¶ 20} Importantly, the state's burden "cannot be discharged by showing no more than acquiescence to a claim of lawful authority." *Bumper* at 549. To "acquiesce" means "to accept, comply, or submit tacitly or passively." *Merriam Webster's Collegiate Dictionary* 10 (10th Ed.1996); *see also* Webster's II *New Collegiate Dictionary* 10 (1999) (defining "acquiescence" as, among other things, "[u]nprotesting assent"). "'[L]awful authority' is an express or implied false claim by police that they can immediately proceed to make the search in any event." *State v. Sears*, 2d Dist. Montgomery No. 20849, 2005-Ohio-3880, ¶ 37.

{¶ 21} Zender claimed to have lawful authority to seize Seem's phone. He told Seem that he would be taking his phone without a warrant, there wasn't anything Seem could do about that, and Seem would not get the phone back until it was "dumped." Zender explained that he "need[ed] to take it with [him] now" because of the chance of evidence being destroyed. He did not present Seem with a choice as to whether or not the phone would be seized. Zender was going to take the phone regardless of whether Seem consented to its search:

> Q: * * * [Y]our intention was to seize and take that phone into custody; wouldn't you agree?
>
> A: Yes.
>
> Q: Alright. That was going to happen whether my client objected or not, correct?

A: At that point in time, yes.

{¶ 22} The only choice Zender presented Seem was whether or not to consent to the "dump" of the phone: (1) Seem could consent to the search of the phone, which Zender represented would be faster and "more convenient" for Seem; or (2) Zender could take the phone and get a warrant to search its contents, "which [would] take longer." Zender acknowledged at the suppression hearing that at the time Seem was presented with these choices, the phone had already been seized. (Q: "But at this point in time the phone had already been seized by you, correct?" A: "Correct.") Seem acquiesced to the warrantless search of the phone because he believed—based on Zender's representations—that Zender was authorized to immediately seize it.

{¶ 23} This is similar to *State v. Samples*, 11th Dist. Geauga No. 93-G-1787, 1994 WL 315710 (June 24, 1994), where the defendant consented to the search of his briefcase only after he was told that police would be taking his briefcase anyway and would not return it until it had been searched. Specifically, in *Samples,* officers arrested Samples for operating a motor vehicle while under the influence of alcohol. After he was cuffed, they asked him if there was anything in his car that he wanted before it was towed away. Samples said that he wanted to have his briefcase. The officers retrieved the briefcase from the vehicle and requested permission to open it. Samples refused. One of the officers then told him that he "was going to enter [the briefcase] into evidence for safekeeping, and [Samples] would not have it in his possession until [the officer] found

14.

out what was in it * * * or was ordered to return it to [appellee.]" *Id.* at *3. Samples responded, "Oh what the hell, go ahead and open it." *Id.* at *1.

{¶ 24} The appellate court concluded that the officer's statement went "beyond candidly informing [Samples] of why a search is needed either with consent or with a search warrant. Instead it is subtly coercive * * *." *Id.* The court emphasized that "no matter how subtly the coercion was applied, the resulting 'consent' would be no more than a pretext for the unjustified police intrusion against which the Fourth Amendment is directed." *Id.*, quoting *Shneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

{¶ 25} Like the defendant in *Samples,* Seem was coerced into consenting to the "dump" of his phone after Zender asserted a claim of lawful authority to seize the phone. Seem merely acquiesced to Zender's claim of lawful authority when he chose the faster, "more convenient" option for getting his phone back. Because acquiescence to a claim of lawful authority is not sufficient to constitute consent, the results of the eventual search of the phone must be suppressed. *See State v. Brown*, 158 Ohio App.3d 21, 2004-Ohio-3364, 813 N.E.2d 956, ¶ 8 (7th Dist.) (affirming trial court's determination that because computers were unlawfully seized, any evidence derived from their seizure should be suppressed).

15.

## E. The Probable Cause Plus Exigency Exception

{¶ 26} "The exigent circumstances doctrine requires probable cause *plus* exigent circumstances in order to be lawful." (Emphasis added.) *State v. Runyon*, 2d Dist. Greene No. 2015-CA-63, 2016-Ohio-5730, ¶ 27. The trial court found that Zender's interview and conversation with Seem supplied Zender with probable cause that the phone contained evidence of illegal activity. But the transcript of the suppression hearing is devoid of any evidence to support that conclusion. All Zender said on the subject was that messages had been "intercepted by ICAC," and the department "had received information that [Seem] had been in a chat room * * * talking to another individual about inappropriate things, possibly putting pictures of his daughter on this website, sharing them, and some of the comments that were being made that there was possibly some sexual misconduct [sic]." He conceded, however, that nothing he saw in scrolling through the phone corroborated that the phone had been used for illegal activity:

Q: * * * From the standpoint of generating probable cause to believe that the phone was used for illegal activity, nothing that you saw on that phone on July 23 of 2020 was discernible to you as evidence of illegal activity on that phone; would that be accurate?

A: It would be accurate that I did not see anything on the phone at that point in time. However, through my experience and doing these cases

16.

in the past, if there—if he was doing these things on that device, there is a very high likelihood that that might still be retained in some shape or form.

Q: Understood, through, through –

A: But not that—I did not see anything that day.

{¶ 27} The state does not specifically argue the probable cause plus exigency exception to the warrant requirement, however, it says in its brief that Zender testified that Seem admitted sending messages and suggested that there was possible illegal activity that was conducted on the phone through an app, apparently asserting that this constituted probable cause and justified Zender's seizure of the phone. But this was never explored in any detail at the suppression hearing. There was no evidence elicited concerning the nature of the comments, photos, app, or illegal activity that led Zender to question Seem in the first place. And it was the state's burden to prove that the warrantless search and seizure here fell into one of the exceptions to the warrant requirement. *State v. Wintermeyer*, 158 Ohio St.3d 513, 2019-Ohio-5156, 145 N.E.3d 278, ¶ 18.

{¶ 28} If it was relying on the exigency exception to the warrant requirement, it was incumbent on the state to demonstrate that it had probable cause to seize the phone. *See, e.g., United States v. Babcock*, 924 F.3d 1180, 1196 (11th Cir.) (explaining that warrantless seizure of cell phone required probable cause to believe both that evidence of a crime would be found on it and that the evidence would be destroyed before they could

17.

obtain a warrant).  In *Babcock,* police were dispatched to defendant's camper on a domestic-violence call.  They arrived to hear a female at the residence yelling "stop, stop."  *Id.* at 1193.  The female, a teenage girl, emerged with cuts on her legs and appeared to be suffering an overdose.  The defendant showed officers a video on his cell phone of the girl "sitting on a bed, holding a knife to her own throat and saying that she wanted to die."  *Id.* at 1185.  In the video the defendant could be heard "berating the girl, telling her, 'you're dumb as f***' and complaining, 'this is what I deal with right here ... you gotta do drama and fighting me all over the place.'"  *Id.*  The court concluded that these circumstances gave the officers probable cause to believe that the defendant had committed a crime against the victim.  It found that "it required no leap for the officers to deduce that evidence of a crime would likely be found on [defendant's] phone given that they "already knew that the phone contained one eyebrow-raising video suggesting an ongoing relationship between a grown man and a teenage girl," and "[i]t was eminently reasonable for them to believe that additional evidence of that relationship—messages, texts, pictures, videos, etc.—would be found in the same place."  *Id.* at 1193.

{¶ 29} Unlike *Babcock,* Zender clearly testified that when he reviewed the contents of the phone in Seem's garage, nothing he saw on the phone provided him with probable cause to believe that a crime had been committed.  Without a warrant and without evidence that Zender possessed probable cause plus exigency, Zender could not lawfully seize the phone.

**{¶ 30}** The state failed to demonstrate that either the consent or exigency exceptions to the warrant requirement justified its warrantless seizure of Seem's cell phone. Accordingly, we find Seem's first assignment of error well-taken. Given our resolution of his first assignment of error, we dismiss his second assignment of error as moot.

### III. Conclusion

**{¶ 31}** The state failed in its burden to show that an exception to the warrant requirement justified its warrantless seizure of Seem's cellphone. Seem's consent to the search of his phone was premised on his acquiescence to Zender's claim of lawful authority to immediately seize the phone. And while Zender explained that he believed that evidence would be destroyed if he left it with Seem, he failed to articulate probable cause for seizing the phone in the first place. Accordingly, we conclude that the trial court erred in denying Seem's motion to suppress evidence, and we find his first assignment of error well-taken. We dismiss as moot Seem's second assignment of error.

**{¶ 32}** We reverse the August 26, 2021 judgment of the Sandusky County Court of Common Pleas and remand this matter to the trial court for proceedings consistent with this decision. The state is ordered to pay the costs of this appeal under App.R. 24.

Judgment reversed
and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Thomas J. Osowik, J.        _____
                  JUDGE

Christine E. Mayle, J.
CONCUR.          _____
                  JUDGE


Mark L. Pietrykowski, J.,
DISSENTS AND WRITES
SEPARATELY.


**PIETRYKOWSKI, J., dissenting,**

{¶ 33} Because I find that Detective Zender had probable cause to believe that evidence of criminal activity was contained on Seem's phone, and thus Zender's initial seizure was appropriate under the exigent circumstances exception to the warrant requirement, I respectfully dissent.

{¶ 34} The majority and I agree that Seem consented to Zender taking and conducting a "dump" of the phone. The majority finds, however, that when Zender informed Seem that he was going to seize the phone regardless of whether Seem

consented or not, Zender did not actually possess the authority to seize the phone because he lacked probable cause to believe that the phone contained evidence of illegal activity. Thus, the majority concludes that Seem's consent was coerced by a false claim of lawful authority, and therefore Seem's consent was not freely and voluntarily given. I disagree that Zender lacked probable cause to believe that the phone contained evidence of illegal activity, and thus I conclude that Zender did have the authority to seize the phone when he so informed Seem. Therefore, I would hold that Seem's consent was not coerced by a false claim of lawful authority, and that it was, in fact, freely and voluntarily given.

Probable cause has been defined as "'reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion.'" (Emphasis sic.) *Smith v. Thornburg*, 136 F.3d 1070, 1074 (6th Cir.1998), quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir.1990). "Probable cause exists when there is a '"fair probability that contraband or evidence of a crime will be found in a particular place."'" *Smith* at 1074, quoting *United States v. Wright*, 16 F.3d 1429, 1437 (6th Cir.1994), quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). "Determining whether probable cause existed at the time of the search is a '"commonsense, practical question" to be judged from the "totality-of-the-circumstances."'" *Smith* at 1074-75, quoting *Wright* at 1437, quoting *Gates* at 230, 103 S.Ct. 2317. In determining whether

21.

probable cause exists, courts may not look to events that occurred after the search or to the subjective intent of the officers; instead, we look to the objective facts known to the officers at the time of the search. *Smith* at 1075, citing *United States v. Ferguson*, 8 F.3d 385, 391-92 (6th Cir.1993) (en banc).

*State v. Maddox*, 2021-Ohio-586, 168 N.E.3d 613, ¶ 16 (10th Dist.).

{¶ 35} Here, the record from the suppression hearing reveals that Zender received information that Seem "had been in a chat room, was talking to another individual about inappropriate things, possibly putting pictures of his daughter on this website, sharing them, and some of the comments that were being made that there was possibly some sexual misconduct." Zender discussed these allegations with Seem in an interview at the police department, and Zender testified that Seem understood the nature of the allegations. Zender testified on cross-examination that during the course of the interview, Seem "did admit to sending * * * those messages, * * * and did suggest that there was possible illegal activity that was done on that phone through an app." Without having the messages that were intercepted by ICAC ("Internet Crimes Against Children") in front of him, Zender agreed with defense counsel that he believed the messages were "described as fantasy messages. 'I want to do this' or 'I'd like to see that' sort of thing." Defense counsel asked Zender if he heard anything from Seem "regarding content of the phone, in other words, did he say, yes there's pictures of children on this phone, or, yes there are

potentially illegal messages on this phone?" Zender replied, "If I remember correctly, he did admit to having that app where he sent those messages and that was on the phone at one point in time, but he said he had deleted it." During the course of the interview, Zender asked Seem if he could view his cell phone, and Seem agreed, except that the phone was at Seem's residence.

{¶ 36} At Seem's residence, Seem allowed Zender to look through the phone. The following exchange took place:

SEEM: You trying to get to all the apps, or...?

ZENDER: Yeah, well I was just kind of starting with these.

* * *

ZENDER: What made...what made you get rid of it off your phone?

SEEM: It wasn't...it wasn't being used, I guess.

ZENDER: Right.

SEEM: So, I figured there was no use having it.

ZENDER: Are any of the phones (sic) that you shared still on your phone?

SEEM: Um. Megan's phone is on my phone, but I'm not even sure where it's at. Or, it's on my plan, but, like I said, I'm not even sure where that's at. * * *

ZENDER: I mean the photos.

SEEM: Oh. Umm...I guess if it was in here...(long pause) Probably, I don't know...Could be in...well...

ZENDER: That's one of them?

SEEM: Yeah.

ZENDER: Without the...?

SEEM: Yeah.

ZENDER: Okay.

SEEM: And then there's...I don't remember what the other one was.

ZENDER: Is it alright if I kind of scroll through and look?

SEEM: Yeah. Absolutely.

{¶ 37} After Zender finished looking through the phone, he informed Seem that he was going to take the phone, and presented Seem with the option of either having Zender obtain a search warrant to dump the phone, or having Seem consent to a dump of the phone.

{¶ 38} At the suppression hearing, Zender described having the phone "dumped" as, "[I]t's an extraction of data from the phone, being in many different shapes and forms; data, pictures, photos. They can go back, and if photos are then deleted, they can still grab them out of the device." Zender testified that while he did not observe any evidence of illegal activity when he looked through appellant's phone, "a lot of data that is deleted off of a device like that is retained in some shape or form that might not be seeable to the

naked eye. * * * [T]hrough my experience and doing these cases in the past, if there -- if he was doing these things on that device, there is a very high likelihood that that might still be retained in some shape or form."

{¶ 39} When viewing the totality of the circumstances, it is clear to me that a fair probability existed that evidence of illegal activity would be found on Seem's phone. Zender testified that Seem admitted to sending messages of a sexual nature regarding his minor daughter through an app on his phone. Furthermore, during the conversation at Seem's residence, when Zender asked if any of the photos that Seem shared were still on the phone, Seem did not deny that he sent any photos, but instead looked to see if there were any still on his phone. As he was looking through the phone, Seem acknowledged the presence of at least one photo, but stated that he could not remember what the other photo was. Based on these facts, and applying common sense, I think it is reasonable to conclude that Seem used an app on his phone to send inappropriate photos and messages of a sexual nature regarding his minor daughter.

{¶ 40} The majority notes that Seem deleted the app off of his phone, and that Zender admitted that he did not see anything as he was scrolling through the phone that would have corroborated the fact that the phone had been used for illegal activity. I find these facts to be immaterial. Zender testified that in his experience, information that is deleted from a phone can still be retained and recovered through the extraction process. Zender's testimony is not surprising or inaccurate, as it is well-recognized that data that is

deleted from an electronic device can still be recovered in some form. *See, e.g., State v. Lowe*, 2d Dist. Montgomery No. 26994, 2017-Ohio-851, ¶ 15 ("Collectors of child pornography tend to keep images for a long time, and digital images can be kept forever and *can even be recovered after being deleted*." (Emphasis added.)); *United States v. Richardson*, 607 F.3d 357, 370-371 (4th Cir.2010) (testimony that "even if a computer file is deleted from a hard drive or other computer media, a computer expert is still likely to retrieve...such files through scientific examination of the computer"); *United States v. Terry*, 522 F.3d 645, 650, fn.2 (6th Cir.2008) ("Images typically persist in some form on a computer hard drive even after the images have been deleted and, as ICE stated in its affidavit, such evidence can often be recovered by forensic examiners."); *United States v. Gourde*, 440 F.3d 1065, 1071 (9th Cir.2006) ("Thanks to the long memory of computers, any evidence of a crime was almost certainly still on his computer, even if he had tried to delete the images. FBI computer experts, cited in the affidavit, stated that 'even if ... graphic image files [] have been deleted ... these files can easily be restored.' In other words, his computer would contain at least the digital footprint of the images."). Thus, the facts that Seem deleted the app from his phone and that Zender was unable to see evidence of illegal activity with his naked eye do not diminish the conclusion that the evidence was likely to be found on the phone.

{¶ 41} Ultimately, the majority concludes that there is no evidence to support the trial court's finding that Zender's interview and conversation with Seem supplied Zender

26.

with probable cause that the phone contained evidence of illegal activity. In reaching this conclusion, the majority reasons that "[t]here was no evidence elicited concerning the nature of the comments, photos, app, or illegal activity that led Zender to question Seem in the first place." I believe that in so concluding, the majority enacts too exacting of a standard. As recognized in *Babcock*, 924 F.3d 1180, 1192 (11th Cir.2019), the Supreme Court has often reiterated that "[p]robable cause * * * is not a high bar: It requires only the 'kind of "fair probability" on which "reasonable and prudent [people,] not legal technicians, act."'" *Kaley v. U.S.*, 571 U.S. 320, 338, 134 S.Ct. 1090, 188 L.Ed.2d (2014), quoting *Florida v. Harris*, 568 U.S. 237, 244, 133 S.Ct. 1050, 185 L.Ed.2d 61 (2013) (quoting *Illinois v. Gates*, 462 U.S. 213, 231, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). The state is not required to produce prima facie evidence of illegal activity by specifically demonstrating what Seem posted or shared.

{¶ 42} Instead, here, based upon the totality of the circumstances, it is reasonable to conclude that Seem used his phone to share messages and photos of a sexual nature regarding his minor daughter. Further, it requires even less of a leap than in *Babcock* to conclude that evidence of illegal activity would be located on Seem's phone, since Seem directly admitted to using his phone to send those messages and photos. Therefore, I would hold that Zender had probable cause to seize Seem's phone under the exigent circumstances exception to the warrant requirement. Consequently, I would hold that Seem's consent was not the result of a coercive false claim of lawful authority, but

27.

instead was a free and voluntary choice between the options of requiring Zender to get a warrant to search the phone and consenting to a search of the phone with the hope of receiving the phone back faster.

{¶ 43} Accordingly, I would find Seem's first assignment of error not well-taken.

{¶ 44} Because I would find Seem's first assignment of error not well-taken, I would also reach Seem's second assignment of error. In his second assignment of error, Seem perfunctorily challenges the constitutionality of the trial court's imposition of an indefinite prison sentence under the Reagan Tokes Law. On a number of occasions, this court has held that the Reagan Tokes Law "does not violate Appellant's constitutional rights to trial by jury and due process of law, and does not violate the constitutional requirement of separation of powers." *State v. Maddox*, 6th Dist. Lucas No. L-19-1253, 2022-Ohio-1350, 188 N.E.3d 682, ¶ 7; *see also State v. Stenson*, 6th Dist. Lucas No. L-20-1074, 2022-Ohio-2072; *State v. Eaton*, 6th Dist. Lucas No. L-21-1121, 2022-Ohio-2432. Therefore, I would hold that appellant's indefinite prison sentence is not unconstitutional.

{¶ 45} Accordingly, I would find Seem's second assignment of error not well-taken.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.